SIXTH DIVISION

                                         September 30, 1998

No. 1-97-2422

KAYLA JAMES, a Minor, by Her Mother )

and Next Friend Lasonia James, )  Appeal from the 

)  Circuit Court of 

Plaintiff-Appellant, )  Cook County

)                  

v. )  No. 95 L 1267   

)             

INGALLS MEMORIAL HOSPITAL,              )  

                                        )

          Defendant-Appellee            )

                                        )

(Sun Kim, M.D.; South Suburban          )  Honorable 

Hospital, and Olympia Fields            )  Philip L. Bronstein,

Osteopathic Medical Center Service, )  Judge Presiding.

     )            

     Defendants). )                      

                  

JUSTICE QUINN delivered the opinion of the court:

This appeal arises from a grant of summary judgment in favor of appellee, Ingalls Memorial Hospital (Ingalls), under section 2-1005 of the Illinois Code of Civil Procedure.  735 ILCS 5/2-1005 (West 1994).  Appellant urges this court to reverse the grant of summary judgment and find that a question of fact exists as to whether appellant's treating physician was the apparent agent of appellee.  For the following reasons, the grant of summary judgment is affirmed.  

This medical malpractice action was brought on behalf of the minor plaintiff, Kayla James, who was born prematurely on August 13, 1992.  Two counts in the complaint alleged vicarious liability of Ingalls based on the negligence of the physician who treated Lasonia James (James), Dr. Kim.  The grant of summary judgment in Ingalls' favor was based on the following evidence adduced from the pleadings, depositions, and affidavits.  

On August 4, 1992, James went to Ingalls' emergency room because she was 22 weeks pregnant and had not eaten in five or six days.  James complained of abdominal pain and vomiting for several days.  

James first saw a triage nurse, then a Doctor G.  Doctor G. contacted James' physician, Dr. Egglesfield, to see if he wanted her transferred to the hospital where he had staff privileges, Olympia Fields Osteopathic Medical Center, or whether she should stay at Ingalls.  Dr. Egglesfield gave approval for James to remain at Ingalls.  

James was then admitted under the care of Dr. Kim, an obstetrician and gynecologist with staff privileges at Ingalls.  The emergency room physician had called Dr. Kim, informing him that James had signs of urinary tract infection, nausea, vomiting and right lower quadrant pain.  

Shortly after her admission, James signed an "Emergency Care/Hospitalization Consent, Authorization For Release of Information and Assignment of Benefits" form (consent form).  This consent form stated the following:

"The physicians associated with SEA and the physicians on staff at this hospital are not employees or agents of the hospital, but independent medical practitioners who have been permitted to use its facilities for the care and treatment of their patients. *** I have had the opportunity to discuss [
sic
] this form, and I am satisfied I understand its contents and significance.  I may withdraw my consent at any time."  

James saw Dr. Kim at approximately 6:35 a.m.  Dr. Kim was chosen to handle James' admission because he was on call on the "on call roster" of department members who are scheduled to care for patients admitted at Ingalls.  

Dr. Kim attempted to transfer James to the University of Chicago, as she was leaking amniotic fluid, but the transfer was refused because the 22-week-old fetus was deemed not viable.  James' medical history revealed two prior miscarriages.  Dr. Kim hospitalized James for two days to provide intravenous (IV) therapy until she was able to eat.  

Dr. Kim next saw James on August 6, 1992.  He asked her if she was able to keep food down, and she replied, "yes."  Dr. Kim then discharged James, telling her to get complete bedrest and follow up immediately with her own physician, Dr. Egglesfield.  Dr. Kim told her that her leaking amniotic fluid meant that she would probably go into labor within the next 7 to 10 days.  Dr. Kim advised James that if anything happened, to come immediately to the emergency room.  James was given discharge instructions.  

James saw Dr. Egglesfield the following day, on August 7, 1992.  On August 13, 1992, James gave birth to appellant, Kayla James (Kayla), at the University of Illinois Hospital.  Kayla weighed 1 pound 7 ounces, but survived.  Kayla purportedly suffers from retinopathy of prematurity (resulting in blindness), and neurological impairment.  

On January 26, 1995, appellant filed this cause of action against Dr. Kim and three suburban hospitals, including Ingalls, where James received care prior to Kayla's birth, for failure to transfer James to an appropriate care facility.  

On April 28, 1997, the trial court entered summary judgment for Ingalls, finding as a matter of law that appellant could not establish vicarious liability based on the actual or apparent agency of Dr. Kim.  

A motion for summary judgment should be granted only where the pleadings, depositions, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law 735 ILCS 5/2-1005(c) (West 1994).  In determining whether there is a genuine issue as to any material fact, courts must construe the pleadings, depositions, admissions, and affidavits strictly in favor of the movant and liberally in favor of the non-movant.  
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 518, 622 N.E.2d 788 (1993).  A triable issue exists where there is a dispute as to material facts or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts.  
Raglin v. HMO Illinois, Inc.
, 230 Ill. App. 3d 642, 645, 595 N.E.2d 153 (1992).  The reviewing court's function is to determine 
de
 
novo
 whether the judgment entered was correct as a matter of law.  
Cates v. Cates
, 156 Ill. 2d 76, 78 (1993).  

Appellant urges this court to find that appellee was vicariously liable for Dr. Kim's negligence and to reverse the grant of summary judgment in appellee's favor.  In 
Gilbert
, our supreme court held that a hospital can be held vicariously liable based on an agency relationship between the hospital (principal) and a physician (agent).  
Gilbert
, 156 Ill. 2d at 518.  In order for a hospital to be vicariously liable for the negligence of its physician under a doctrine of apparent authority, a plaintiff must show:  (1) the hospital or its agent acted in a manner that would lead a reasonable person to conclude that the physician alleged to be negligent was an employee or agent of the hospital; (2) that the hospital had knowledge of acts of the agent which created the appearance of authority, where there were such acts, and acquiesced in them; and (3) the plaintiff acted in reliance on the conduct of the hospital or its agent, "consistent with ordinary care and prudence."  
Gilbert
, 156 Ill. 2d at 525.  The supreme court stated the following:

"[L]iability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital.  
If a patient knows, or should have known
, that the treating physician is an independent contractor, then the hospital will not be liable."  (Emphasis added.)  
Gilbert
, 156 Ill. 2d at 522.  

The relevant inquiry under 
Gilbert
 is whether the plaintiff 
knew
 that the physician was an independent contractor.  See 
Dahan v. UHS of Bethesda, Inc.
, 295 Ill. App. 3d 770, 692 N.E.2d 1303, 1308 (1998).  A recent case decided by this court, 
Dahan
, held a hospital vicariously liable for the negligence of a physician, even though the contract between the hospital and the physician specifically provided that the physician was an independent contractor.  
Dahan
, 295 Ill. App. 3d at 776-77, 692 N.E.2d at 1308.  Evidence in the case showed that the plaintiff did not know the physician was an independent contractor.  The physician had a contract with Mount Sinai Hospital (Mount Sinai) which obligated him to see employees of the hospital free of charge, and the plaintiff was an employee of Mount Sinai.  
Dahan
, 295 Ill. App. 3d at 776-77, 692 N.E.2d at 1308.  The physician was not allowed to use his office in Mount Sinai's diabetic clinic to provide service to his private patients.  Also, the plaintiff registered at the admitting desk on the first floor of Mount Sinai before seeing the physician on the fifth floor.  Based on this evidence, this court held that both the physician and Mount Sinai acted in a manner that would lead a reasonable person to conclude that the physician was an agent of Mount Sinai.  
Dahan
, 295 Ill. App. 3d at 776-77, 692 N.E.2d at 1308.  Because the plaintiff did not know the physician was an independent contractor, this court held Mount Sinai vicariously liable.  
Dahan
, 295 Ill. App. 3d at 776-77, 692 N.E.2d at 1308.  

Appellant argues that the question of whether Dr. Kim was appellee's apparent agent remains a question of fact, even though appellant signed appellee's consent to treatment form, which stated that the physicians were independent medical practitioners.  Even if the question presented would ordinarily be a question of fact, if only one conclusion may be drawn from the undisputed facts, then a question of law is presented which may be appropriately dispensed with by summary judgment.  
Reynolds v. Decatur Memorial Hospital
, 277 Ill. App. 3d 80, 84 (1996).  

Appellant first urges this court to disregard the consent form she signed because the trial court did not rely on the form in granting summary judgment to appellee.  However, in fact, the trial court did say that the consent form was one of several factors it considered in granting summary judgment to appellee.  The trial court also held that appellant failed to prove that she had acted in reliance upon the conduct of the hospital or its agent.  We address this issue later in this opinion.  In any event, we may affirm the trial court's decision on any basis in the record.  
Becker v. Zellner
, 292 Ill. App. 3d 116, 130, 684 N.E.2d 1378 (1997).  

In 
Gilbert
, the consent form signed by the patient read in pertinent part:

"The undersigned has been informed of the emergency treatment considered necessary for the patient whose name appears above and that the treatment and procedures will be performed by physicians and employees of the hospital.  Authorization is hereby granted for such treatment and procedures."  
Gilbert
, 156 Ill. 2d at 516.  

In this case, the consent to treatment form stated that "the physicians on staff at this hospital are not employees or agents of the hospital, but independent medical practitioners who have been permitted to use its facilities for the care and treatment of their patients."  There is no case law directly on point in Illinois dealing with the issue of the legal effect of an independent contractor disclaimer on a consent to treatment form.

Appellant has cited 
Sampson v. Baptist Memorial Hospital System
, 940 S.W.2d 128 (Tex. Ct. App. 1996), for the proposition that a question of fact remains regardless of a hospital's disclaimer that its physicians are independent contractors.  After appellant's brief was filed, a unanimous Texas Supreme Court overruled 
Sampson
 and reinstated summary judgment for the hospital and held that, as a matter of law, no conduct by the hospital in that case could have lead a reasonable patient to believe that the treating emergency room physicians were employees of the hospital.  
Baptist Memorial Hospital System v. Sampson
, 969 S.W.2d 945 (Tex. 1998).  

Our supreme court in 
Gilbert
 held that the element of "holding out" by a hospital is satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors.  
Gilbert
, 156 Ill. 2d at 526.  Here, the hospital informed James of Dr. Kim's independent contractor status in the consent form.  The holding in 
Gilbert
 is applicable to claims based on the negligent conduct of physicians wherever it occurs and not only to emergency rooms.  
Malanowski v. Jabamoni
, 293 Ill. App. 3d 720, 727 (1997).  While we do not hold that the existence of an independent contractor disclaimer in a consent form is always dispositive on the issue of "holding out," it is an important factor to consider.  

The first element a plaintiff must show in an action under the doctrine of apparent authority is that "the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital."  
Gilbert
, 156 Ill. 2d at 525.  Certainly having the patient sign a consent for treatment form which expressly states that "the physicians on staff at this hospital are not employees or agents of the hospital" may make the proving of this element extremely difficult.  Under the facts of this case, appellant has failed to meet her burden as to this element.  

The instant case is easily distinguishable from 
Gilbert
 and 
Dahan
.  In those cases, the reason the patient-plaintiff did not know of the physician's independent contractor status was because it was either set out in a contract between the physician and the hospital, or understood by virtue of the compensation arrangements between the hospital and physicians.  See 
Gilbert
, 156 Ill. 2d at 515 (where the hospital considered its active staff physicians to be independent contractors where it did not pay them any salary or business expenses); 
Dahan
, 295 Ill. App. 3d at 776-77, 692 N.E.2d at 1308 (where the contract between the hospital and the physician specified that the physician was an independent contractor).  

Here, in contrast, Dr. Kim's independent contractor status was clearly set out in the consent to treatment form, which appellant signed.  Under 
Gilbert
, appellant here either knew Dr. Kim was an independent contractor or should have known.  

Appellant also argues that appellee should be vicariously liable because she relied on appellee to provide her care.  Appellant correctly cites 
Sztorc v. Northwest Hospital
, 146 Ill. App. 3d 275, 496 N.E.2d 1200 (1986), as the seminal case on reliance in an apparent agency case.  The plaintiff in 
Sztorc
 testified that she was unaware of the independent contractor relationship between the physician and the hospital.  The plaintiff in 
Sztorc
 further testified in the following manner as to her reliance on the hospital to provide her care:

"Q: *** [W]ould it have made any difference to you, one way or the other, whether or not Dr. Greenberg and Dr. Bluhm were in private practice or whether they were employed by Northwest Hospital?

A: I don't know.

Q: You don't know whether it would have made any difference?

A: I don't know."

Q: So you don't know now, and you didn't know then, is that right?

A: I don't know."  
Sztorc
, 146 Ill. App. 3d at 278-79.  

This court held that the plaintiff's testimony left a factual question as to whether she would have acted differently had she known of the contractual relationship between the hospital and the treating physicians, and thus reversed a grant of summary judgment in the hospital's favor.  
Sztorc
, 146 Ill. App. 3d at 279.  

Here, conversely, it would have made no difference to appellant whether Dr. Kim was an employee of Ingalls.  She testified in a deposition as follows:  

"Q: Did you have any understanding of the relationship that the doctors in the emergency room had with Ingalls whether they were employees versus independent doctors?

A: No, I didn't.

Q: If you had known that the emergency room physicians at Ingalls were not employees of Ingalls, would you still have gone there on August 4th?

A: Yes, I would have.

Q: Do you know who Dr. Kim is?

A: The physician who saw me when I was admitted into Ingalls Hospital before I had my daughter.  

***

Q: And that was during your August 4th admission?

A: Yes.

Q: And did you have any understanding of Dr. Kim's relationship with the Ingalls?

A: No, I didn't.

Q: If you had known that Dr. Kim was not an employee of Ingalls, would you have gone somewhere else?

A: I really never even considered it because I went where I had a public aid medical card.  I figured this was the doctor who public aid was paying for, and I had no choice but to see him."  

Appellant's testimony, unlike that of the plaintiff in 
Sztorc
, was not equivocal and did not indicate that the relationship between Dr. Kim and the hospital would have made a difference in her decision to go to Ingalls.  Thus, in addition to not being able to satisfy the "holding out" element of apparent agency, appellant also cannot meet her burden in establishing the element of reliance because she did not in fact rely on any representations of the hospital or the doctor in going to Ingalls.  

In response to Ingalls' motion for summary judgment, appellant submitted an affidavit that gave reasons as to why she went to Ingalls which were not contained in her deposition testimony.  

Testimony at a discovery deposition may constitute a judicial admission.  
In re Estate of Rennick
, 181 Ill. 2d 395, 407 (1998).  Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge.  
Rennick
, 181 Ill. 2d at 406.  Where made, a judicial admission may not be contradicted in a motion for summary judgment.  
Rennick
, 181 Ill. 2d at 406.  

In cases involving summary judgment, a counteraffidavit does not place in issue material facts that were removed from contention by a party's deliberate, unequivocal admissions under oath in a deposition.  
Smith v. Ashley
, 29 Ill. App. 3d 932, 935 (1975); 
Schmahl v. A.V.C. Enterprises, Inc.
, 148 Ill. App. 3d 324, 331 (1986).  The purpose of this rule is to remove the temptation to commit perjury.  
Smith
, 29 Ill. App. 3d 932, cited in 
Rennick
, 181 Ill. 2d at 407.  

In this case, James testified unequivocally in her deposition that she went to Ingalls because it was very near to her home, that she would have gone to Ingalls even if she had known that the emergency room physicians at Ingalls were not employees of Ingalls, and that she went to Ingalls because she thought public aid required her to see a doctor at Ingalls.  

Appellant's assertions contained in her affidavit filed in response to appellee's motion for summary judgment do not create a genuine issue of material fact as to whether appellant acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence as required under 
Gilbert
.  
Gilbert
, 156 Ill. 2d at 525.  

For the above-stated reasons, the judgment of the circuit court is affirmed.  

Affirmed.

CAMPBELL, P.J., and GREIMAN, J., concur.