NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190773-U

NO. 4-19-0773

FILED
October 1, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| TAMRA PRINCE and KENNETH RYAN PRINCE, | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | Macon County |
| DAVID KIEL, M.D., PRAIRIE EMERGENCY | ) | No. 17L135 |
| PHYSICIANS, S.C., an Illinois Corporation, and | ) | |
| DECATUR MEMORIAL HOSPITAL, an Illinois | ) | |
| Corporation, | ) | |
| Defendants | ) | Honorable |
| (Decatur Memorial Hospital, an Illinois Corporation, | ) | Thomas E. Little, |
| Defendant-Appellee). | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err in granting defendant hospital's motion for summary judgment on the basis that, as a matter of law, it was not vicariously liable for the alleged negligent acts or omissions of a physician in its emergency department under the doctrine of apparent agency.

¶ 2     Plaintiffs, Tamra and Kenneth Ryan Prince, filed an action against defendants—Decatur Memorial Hospital (DMH), an Illinois Corporation; Dr. David Kiel; and Prairie Emergency Physicians, S.C., an Illinois Corporation (Prairie)—seeking damages for injuries Tamra sustained after receiving allegedly negligent treatment from Dr. Kiel in DMH's emergency department. DMH moved for summary judgment on the basis that it could not be held vicariously liable for Dr. Kiel's alleged negligent acts or omissions because he was not DMH's employee or

agent. The circuit court granted DMH's motion, and plaintiffs appeal, arguing summary judgment was improper because a material question of fact exists as to whether Dr. Kiel was an apparent agent of DMH. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In October 2017, plaintiffs filed a four-count complaint against defendants, alleging DMH contracted with Prairie to provide physicians to staff its emergency medicine department and that Dr. Kiel was a Prairie employee who specialized in emergency medicine. According to the complaint, in December 2016, Tamra was evaluated in DMH's emergency room by Dr. Kiel after experiencing numbness in her left arm, hand, and leg; a loss of balance; and other "coordination issues." Plaintiffs alleged Dr. Kiel was negligent in his care and treatment of Tamra and failed to diagnose that she was developing a stroke or treat her for that condition. They asserted that, as a result of Dr. Kiel's negligence, Tamra's "condition worsened" and plaintiffs suffered damages.

¶ 5            Plaintiffs' claims against DMH were based on the theory of apparent agency. They alleged that DMH held itself out as a provider of emergency room care and that plaintiffs neither knew, nor should have known, that Dr. Kiel was not DMH's employee. Plaintiffs further asserted that Tamra did not choose Dr. Kiel as her physician but relied upon DMH "to provide complete emergency room care."

¶ 6            In May 2019, DMH filed a motion for summary judgment, alleging no genuine issue of material fact existed that Dr. Kiel was not its employee or its agent and, as a result, it was entitled to a judgment in its favor as a matter of law. DMH argued Dr. Kiel's deposition testimony showed he was not its employee and that it had disclosed the lack of any employment or agency

relationship between it and Dr. Kiel both on signs displayed at its facility and in "Consent for Treatment" forms signed by plaintiffs. It attached several documents to its motion, including Dr. Kiel's discovery deposition; documents signed by plaintiffs in which they consented to treatment at DMH in December 2016 and in years prior; the affidavit of Larry Fore, DMH's facilities technician; and the discovery depositions of both plaintiffs.

¶ 7        During his deposition, Dr. Kiel testified he had been a partner with Prairie and was not an employee of DMH at the time he evaluated Tamra. When he saw Tamra, he was wearing plain scrubs and a name badge with DMH's logo. Dr. Kiel testified he did not tell Tamra that he was not DMH's employee and asserted he never discussed his employment situation with patients.

¶ 8        In his affidavit, Fore averred that his duties at DMH included maintaining its signage. In December 2016, DMH displayed signs in various areas of its facility entitled "Identification of Physicians" that stated as follows:

> "You are notified that the emergency physicians, pathologists, radiologists, and anesthesiologists, as well as some other hospital-based physicians are not employees or agents of the hospital. For a list of those physicians not covered by the foregoing statement, please contact the hospital's medical staff office at 217-876-2115."

According to Fore, the signs were posted in the waiting rooms for DMH's emergency room and at each registry desk in the emergency room. A photograph of one of the signs was attached to Fore's affidavit.

¶ 9        As stated, DMH also attached to its motion documents signed by plaintiffs, consenting to treatment at DMH for multiple visits from February 2007 to December 2016. The

documents contained the same notification as the "Identification of Physicians" signs with identical wording. In some of the documents, the notification was in bold print.

¶ 10 Finally, plaintiffs' discovery depositions showed that on December 28, 2016, an ambulance was called for Tamra and she asked to be taken to DMH. Tamra did not recall signing any documents at DMH and "probably" did not read the documents she signed. She also did not remember seeing the "Identification of Physicians" signs displayed at DMH or seeing Dr. Kiel. Tamra stated she believed Dr. Kiel was an employee of DMH because he wore a white lab coat and was a doctor.

¶ 11 Kenneth recalled seeing Dr. Kiel at DMH but did not remember if Dr. Kiel was wearing a white coat. He believed Dr. Kiel was employed by DMH "[b]ecause he worked there." Kenneth also did not specifically recall signing any documents at DMH and stated he would not have read any document that was given to him to sign. He further did not remember seeing the "Identification of Physicians" signs that DMH displayed.

¶ 12 In June 2019, plaintiffs filed a response to DMH's motion for summary judgment. They argued DMH heavily marketed its "comprehensive emergency services" through advertisements, which contained no notification that the physicians working in its emergency department were not its employees and, instead, gave the impression that the emergency care it offered included "providing an emergency physician—vetted and employed by DMH itself." Plaintiffs also argued that the notification contained in DMH's "Consent for Treatment" forms and on its "Identification of Physicians" signs was "unclear and ambiguous," such that plaintiffs neither knew nor should have known that Dr. Kiel was employed by Prairie rather than DMH.

¶ 13 Attachments to plaintiffs' response included Dr. Kiel's discovery deposition, the

discovery depositions of two emergency room nurses involved in treating Tamra in December 2016, plaintiffs' discovery depositions, and Tamra's affidavit. In the affidavit, Tamra averred that she did not choose Dr. Kiel as her physician on December 28, 2016, but relied on DMH to assign a physician to her. She asserted she thought the physician assigned to her was a DMH employee and that she had seen advertisements for DMH's emergency room prior to December 28, 2016. Tamra further averred that she did not read any patient consent forms prior to receiving care in the emergency room, asserting she was "extremely anxious about [her] health and thought that [she] was having a stroke." Tamra also stated she did not recall seeing or reading any signs at DMH that addressed the employment status of physicians who worked there. She did not learn Dr. Kiel was not employed by DMH until after her lawsuit was filed.

¶ 14        Plaintiffs also attached various DMH advertisements to their response. In some advertisements, DMH asserted "All ERs Are Not Created Equal" and that it offered "Comprehensive Emergency Services," provided "total emergency care," and offered "24/7 critical emergency services." It advertised "24/7" heart, stroke, brain and spine care. In other advertisements, DMH promoted specific doctors that both lived and worked in the community, including cardiologists and brain and spine surgeons. It advertised that it had "New ER Doctors," asserting it "brought in a new group of highly skilled, compassionate doctors to provide quality care to [its] ER patients." Further, it advertised new directors in its emergency room, as well as its emergency stroke services.

¶ 15        In July 2019, the circuit court conducted a hearing on DMH's motion for summary judgment. The following month, it entered a written order granting the motion. In finding summary judgment in DMH's favor was appropriate, the court stated as follows:

"This court reads [the consent form language] to clearly and unequivocally provide that emergency physicians are not employees or agents of [DMH]. There is no factual dispute that Dr. Kiel is an emergency room physician. The issue of whether 'some other hospital-based physicians' are or are not employees or agents of the hospital is not before the court and this court finds no ambiguity in the [consent form] language as it relates to emergency room physicians."

Further, the court stated that after considering the materials submitted by the parties, including the consent for treatment forms, the "Identification of Physicians" signs, and the advertisement materials, it found plaintiffs could not establish that DMH held Dr. Kiel out as either its agent or its employee.

¶ 16 In September 2019, plaintiffs filed a motion to reconsider the circuit court's grant of summary judgment in DMH's favor. Alternatively, it asked the court to make a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason for delaying either the enforcement or appeal, or both, of its ruling. In October 2019, the court denied plaintiffs' motion to reconsider but made a written Rule 304(a) finding.

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, plaintiffs argue the circuit court erred by granting DMH's motion for summary judgment in its favor. They contend a genuine issue of material fact exists as to whether Dr. Kiel was DMH's apparent agent.

¶ 20 Initially, we note DMH contends the statement of facts in plaintiffs' brief should be stricken due to noncompliance with Illinois Supreme Court Rule 341 (eff. May 25, 2018), which

sets forth the requirements for the form and content of appellate court briefs. Specifically, the rule provides that an appellant's brief must include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment ***." Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). We agree that plaintiffs' statement of facts is in violation of Rule 341(h)(6), in that it contains improper argument and commentary by plaintiffs. As argued by DMH, this court "may strike [an appellant's] statement of facts when the improprieties hinder our review." *Hall v. Naper Gold Hospital LLC*, 2012 IL App (2d) 111151, ¶ 9, 969 N.E.2d 930. In this instance, however, we find it unnecessary to strike the entirety of plaintiffs' statement of facts. Instead, we disregard any improper argument or commentary.

¶ 21    Turning to the merits of plaintiffs' appeal, we note "[s]ummary judgment is appropriate 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Wingert by Wingert v. Hradisky*, 2019 IL 123201, ¶ 42, 131 N.E.3d 535 (quoting 735 ILCS 5/2-1005(c) (West 2016)). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12, 115 N.E.3d 81. "[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." (Internal quotation marks omitted.) *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488. On appeal, the trial court's summary judgment ruling is subject to *de novo* review. *Monson*, 2018 IL 122486, ¶ 12.

¶ 22    The doctrine of apparent authority refers to a type of agency relationship under which "[a] principal will be bound by not only that authority which he actually gives to another,

but also by the authority which he appears to give." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523, 622 N.E.2d 788, 795 (1993). "Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing." *Id.* "It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Id.*

¶ 23    "[U]nder the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Id.* at 524. For such liability to exist, a plaintiff must show the following:

> "(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." (Internal quotation marks omitted.) *Id.* at 525.

"To survive a defendant hospital's motion for summary judgment on a claim of apparent agency, a plaintiff must present at least some evidence to satisfy each of the *Gilbert* factors." *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 25, 967 N.E.2d 411.

¶ 24    The first two *Gilbert* factors are commonly grouped together and referred to as the

"holding out" element of apparent agency. *Id.* ¶ 26. That element "does not require an express representation by the hospital that the person alleged to be negligent is an employee." *Gilbert*, 156 Ill. 2d at 525. "Rather, the element is satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors." *Id.* In *Gilbert*, the supreme court stressed that liability does not attach to a hospital "[i]f a patient knows, or should have known, that the treating physician is an independent contractor[.]" *Id.* at 522.

¶ 25        Here, plaintiffs assert DMH unquestionably held itself out as a provider of complete emergency medical services, noting the advertisements promoting its emergency department. Although they acknowledge that the "holding out" element of *Gilbert* is not met where a plaintiff knew or should have known that his or her treating physicians were not employees or agents of the defendant hospital, they contend that their knowledge, actual or constructive, cannot be determined as a matter of law in the present case. Specifically, plaintiffs challenge DMH's claim, with which the circuit court agreed, that the language contained in DMH's consent forms and its "Identification of Physicians" signs clearly and unambiguously informed plaintiffs of Dr. Kiel's independent contractor status. They assert the language of both is ambiguous, creating a question of fact as to whether Dr. Kiel was DMH's apparent agent and precluding summary judgment in DMH's favor.

¶ 26        As the parties acknowledge, one factor relevant to the "holding out" element of apparent agency is the existence of an independent contractor disclaimer in a defendant hospital's consent forms. See *James by James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 633, 701 N.E.2d 207, 210-11 (1998) ("While we do not hold that the existence of an independent contractor

disclaimer in a consent form is always dispositive on the issue of 'holding out,' it is an important factor to consider."). A patient who signs a consent for treatment form "legally signifies that he had an opportunity to become familiar with and comprehend [its] terms." (Internal quotation marks omitted.) *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, ¶ 55, 58 N.E.3d 102 (rejecting the plaintiff's argument that English-language consent forms were insufficient to put a non-English speaker on notice of their terms). Thus, where a physician's independent contractor status is "clearly set out in the consent to treatment form, which [the plaintiff] signed," it may be said that the plaintiff knew or should have known that the physician was not an employee or agent of the hospital. *James*, 299 Ill. App. 3d at 633; see also *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1087, 907 N.E.2d 490, 495 (2009) (stating, "if [the] plaintiff was placed on notice of the independent contractor status of [her] doctors, it would be unreasonable for her to assume that they were employed by [the] defendant and, thus, she could not sustain an apparent agency claim against [the] defendant" (internal quotation marks omitted)).

¶ 27 Several of our appellate court decisions have upheld summary judgment in favor of defendant hospitals based on the plaintiffs' signing of consent forms containing independent contractor disclosures. See *Mizyed*, 2016 IL App (1st) 142790, ¶ 41 (collecting cases). However, "a consent form will not preclude recovery under an apparent agency theory if it is ambiguous or potentially confusing as to whether one or more of the plaintiff's treating physicians are agents of the hospital or independent contractors." *Id.* ¶ 42.

¶ 28 In this case, the record shows plaintiffs signed consent for treatment forms before receiving treatment at DMH on several occasions, including December 28, 2016, the day Tamra was evaluated by Dr. Kiel. Again, both the consent forms and signs displayed in and around

DMH's emergency department contained the following disclosure statement:

> "You are notified that the emergency physicians, pathologists, radiologists, and anesthesiologists, as well as some other hospital-based physicians are not employees or agents of the hospital. For a list of those physicians not covered by the foregoing statement, please contact the hospital's medical staff office at 217-876-2115."

¶ 29 As stated, plaintiffs argue the above disclosure statement is ambiguous. They acknowledge on appeal that the first sentence of the statement "does clearly say that [emergency room] physicians are not employees." However, they contend that the second sentence of the statement "takes back what the first sentence said and makes it unclear whether any given emergency physician, pathologist, radiologist, anesthesiologist or other hospital-based physician is or is not an employee or an agent." We disagree and find the statement clearly and unambiguously informed plaintiffs that emergency physicians at DMH were not its employees or agents.

¶ 30 Here, there is no dispute by plaintiffs that Dr. Kiel was an "emergency physician." Further, the plain language in the first sentence of the disclosure statement clearly provided, *without qualification*, that four categories of physicians—including "emergency physicians"—were "not employees or agents" of DMH. The first sentence also refers to a fifth category of physicians—"other hospital-based physicians." However, the disclosure statement *goes on to qualify* the information provided as to that category, indicating that only "some" of the physicians in that category are independent contractors. Further, rather than negating the information provided in the first sentence of the statement as plaintiffs claim, the second sentence simply clarifies how

- 11 -

a patient may determine who are the physicians, specifically the "other hospital-based physicians," not covered by the first sentence. Ultimately, it is only the employment status of "other hospital-based physicians" that is unclear in the disclosure statement, not the status of the other four categories of physicians. Only by ignoring the plain language of the disclosure statement, specifically the qualification of only one of the five categories of physicians set forth in the statement, are plaintiffs able to find ambiguity in the consent form language.

¶ 31    We note that to support their argument on appeal, plaintiffs cite *Hammer v. Barth*, 2016 IL App (1st) 143066, 48 N.E.3d 769, wherein the First District held a consent form disclaimer was ambiguous and not dispositive of the "holding out" element of apparent agency. *Id.* ¶ 24. There, however, the relevant consent form disclosure statement provided only that "some or all of the physicians" providing medical services at the defendant hospital were "not employees or agents of the hospital, but rather independent practitioners" and that "[n]on-employed physicians" included, "but [were] not limited to," certain specified categories of physicians. *Id.* ¶ 5.

¶ 32    The disclosure statement at issue in this case is clearly distinguishable from the one presented in *Hammer*. As set forth above, it clearly and without qualification provided that emergency physicians like Dr. Kiel were not employees or agents of DMH. We find the circumstances of this case are more similar to those cases cited by DMH, where consent form disclosures clearly and unmistakably informed patients that their treating physicians were independent contractors. See *Wallace*, 389 Ill. App. 3d at 1088 (holding that a consent form stating "physicians who provide[d] professional services *** such as *** [the patient's] attending physician and consulting physicians" were "not the employees or agents of [the hospital] but *** independent contractors" was clear and sufficient to demonstrate knowledge by the plaintiff as a

- 12 -

matter of law); *Churkey v. Rustia*, 329 Ill. App. 3d 239, 245, 768 N.E.2d 842, 847 (2002) (finding no triable issue of fact where disclosures in a consent form stated the defendant hospital "uses independently contracted physicians" and that "physicians are not employees of [the defendant hospital]"); *James*, 299 Ill. App. 3d at 633 (finding the "holding out" element of *Gilbert* was not met where the patient signed a consent for treatment form that expressly stated " 'the physicians on staff at this hospital are not employees or agents of the hospital' ").

¶ 33        As set forth above, under *Gilbert*, the "holding out" element "is satisfied if the hospital holds itself out as a provider of emergency room care *without informing* the patient that the care is provided by independent contractors." (Emphasis added.) *Gilbert*, 156 Ill. 2d at 525. Here, although plaintiffs presented evidence that DMH advertised itself as an emergency medicine provider, evidence also showed that it *did* inform plaintiffs that the emergency physicians in its emergency department were not its employees or agents. That information was provided both in the "Identification of Physician" signs posted in and around its emergency department and in the consent forms signed by plaintiffs. Under these circumstances, we agree with DMH that no genuine issue of material fact exists that Dr. Kiel was not its apparent agent and the circuit court properly granted summary judgment in its favor.

¶ 34                          III. CONCLUSION

¶ 35        For the reasons stated, we affirm the circuit court's judgment.

¶ 36        Affirmed.