2023 IL App (1st) 220557-U

SIXTH DIVISION
June 2, 2023

No. 1-22-0557

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOSEF STELZER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 L 5279 |
| | ) | |
| NORTHWEST COMMUNITY HOSPITAL, | ) | The Honorable |
| | ) | Rena Van Tine, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mikva and Justice C.A. Walker concurred in the judgment.

**ORDER**

*Held*: We affirm the trial court's grant of partial summary judgment to defendant hospital on the basis that, as a matter of law, the hospital was not vicariously liable for the alleged negligent acts of its physicians under the doctrine of apparent agency.

¶ 1    Plaintiff-Appellant Josef Stelzer brought suit against defendant-appellee Northwest Community Hospital (NCH), alleging negligent medical treatment by Dr. DeBoer and Dr. Podgorny when he was a patient at NCH. NCH moved for partial summary judgment on the basis that it could not be held vicariously liable for the actions of Dr. DeBoer and Dr. Podgorny because they were independent contractors and not NCH employees or agents. The trial court

granted summary judgment to NCH. Stelzer appeals, arguing that summary judgment was improper because a material question of fact exists as to whether Dr. DeBoer and Dr. Podgorny were apparent agents of NCH. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3      On November 5, 2013, Josef Stelzer saw his regular physician, Dr. Carl Lang, for his annual exam. Dr. Lang practiced through NCH Medical Group, an entity that is separate from but related to NCH. When Stelzer's electrocardiogram results came back abnormal, Dr. Lang ordered a stress test for Stelzer. When the stress test results also came back abnormal, Dr. Suhr performed a catheterization procedure, which revealed that Stelzer's left anterior descending (LAD) artery (sometimes known as the "widowmaker") was totally occluded. Dr. Suhr referred Stelzer to NCH and recommended that he undergo open heart surgery right away.

¶ 4      Before his catheterization procedure and heart surgery, Stelzer signed "Universal Consent" forms provided by NCH. The consent forms contained the following language:

"MY PHYSICIANS, ALLIED PROFESSIONALS ARE NOT NCH EMPLOYEES/AGENTS

My care will be managed by physicians who are not employed by or acting as agents of NCH but have privileges at these facilities. My physician may decide to call in consultants who are also not employed by or agents of NCH and who practice in other specialties to provide care to me. To provide specialized services such as emergency medicine, radiology, radiation oncology, pathology and anesthesiology, NCH has entered into agreements with independent physician groups. The members of these groups are not employees or agents of NCH. I understand that NCH does not control physician's professional judgment.

My care may be managed by allied health professionals such as nurse anesthetists, physician assistants, advanced practice nurses and nurse midwives who are not employees or agents of NCH. I understand that NCH does not control allied health professional's judgment.

I understand that my treating physicians or allied health professionals may not participate in the same insurance plans as NCH and that I will receive a separate bill for these services."

¶ 5     Stelzer admitted that he can read English, signed both consent forms, and had no questions about the forms at the time he signed them.

¶ 6     On November 15, 2013, Dr. David DeBoer performed coronary artery bypass grafting (CABG) surgery on Stelzer at NCH. During the CABG procedure, anesthesiologist Dr. Kathryn Podgorny employed a diagnostic procedure called transesophageal echocardiography ("TEE"), where a special probe was advanced down Stelzer's esophagus to provide pictures of Stelzer's heart.

¶ 7     After his surgery, Stelzer developed complications and, on November 21, 2013, he was diagnosed with an esophageal perforation. The perforation was repaired, but Stelzer developed septic infection and had to spend an additional eight weeks in the hospital to recover.

¶ 8     Stelzer sued Dr. DeBoer, Dr. Podgorny, and physician assistant (PA) Christine Gilbert, who handled Stelzer's post-operative care. Stelzer also sued NCH and alleged that NCH was vicariously liable for the actions of Dr. DeBoer, Dr. Podgorny, and PA Gilbert.

¶ 9       It is undisputed that Dr. DeBoer and Dr. Podgorny were not NCH employees when they treated Stelzer in 2013. Dr. DeBoer was employed by Cardiac Surgery Associates, S.C., and Dr. Podgorny was employed by Midwest Anesthesia Partners, LLC. Both are independent physician groups that contracted to provide services to NCH. NCH does not dispute that PA Gilbert was an NCH employee in 2013.

¶ 10      NCH filed a motion for partial summary judgment, denying that Dr. DeBoer and Dr. Podgorny were its actual or apparent agents. In support of its motion, NCH argued that because Stelzer signed a consent form prior to his open heart surgery, which expressly stated that Stelzer's physicians were not agents or employees of NCH, it could not be held vicariously liable for Dr. DeBoer and Dr. Podgorny's alleged negligent acts.

¶ 11      On October 22, 2021, the court granted NCH's motion for partial summary judgment. The court found that the consent forms Stelzer signed placed him on notice of Dr. DeBoer and Dr. Podgorny's independent contractor status, and therefore no genuine issue of material fact existed. The trial court denied Stelzer's motion for reconsideration, and this appeal followed.

¶ 12      Stelzer argues that the trial court erred when it granted partial summary judgment in favor of NCH. He asserts that the consent forms he signed were vague, misleading, and confusing, and thus insufficient to support the court's grant of summary judgment. NCH contends that the trial court correctly concluded that the plain, clear language of the consent forms signed by Stelzer supported a grant of summary judgment here.

¶ 13                                II. ANALYSIS

¶ 14      We review a trial court's grant of summary judgment *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.,* 213 Ill. 2d 307, 315 (2004). "Summary judgment is proper where the pleadings, depositions, admissions, affidavits and exhibits on file, when viewed in the light most

4

favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Petrovich v. Share Health Plan of Illinois, Inc.,* 188 Ill. 2d 17, 30-31 (1999); 735 ILCS 5/2-1005(c) (West 1985). The court must construe the facts strictly against the moving party by making reasonable inferences liberally in favor of the opponent. *Espinoza v. Elgin, Joliet & Eastern Railway Co.,* 165 Ill. 2d 107, 113 (1995). However, "if only one conclusion may be drawn from the undisputed facts, then a question of law is presented which may be appropriately dispensed with by summary judgment." *James by James v. Ingalls Memorial Hospital,* 299 Ill. App. 3d 627, 632 (1998).

¶ 15    Under the doctrine of apparent authority, a principal is not only bound by the authority it actually gives to another, but also "by the authority which [it] appears to give." *Gilbert v. Sycamore Municipal Hospital,* 156 Ill. 2d 511, 523 (1993). Where a principal creates the appearance of authority, "he should not then be permitted to deny the agency if an innocent third party reasonably relies on the apparent agency and is harmed as a result." *York v. Rush-Presbyterian-St. Luke's Medical Center,* 222 Ill. 2d 147, 187 (2006) (quoting *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213 (1996)).

¶ 16    For a hospital to be held liable under a theory of apparent authority, a plaintiff must show that:

> "(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent

5

with ordinary care and prudence." *Gilbert,* 156 Ill. 2d at 525 (quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 208 (1988)).

¶ 17    If the hospital "holds itself out as a provider of care without informing the patient that the care is provided by independent contractors," the holding out element is satisfied. *York,* 222 Ill. 2d at 185. If, however, a patient "knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Schroeder v. Northwest Community Hospital,* 371 Ill. App. 3d 584, 591 (2006).

¶ 18    In this case, Stelzer concedes that he signed NCH's consent form prior to his surgery and that "the consent form states that the doctors treating [him] are not employed by NCH." Nevertheless, he argues that the language in the consent form is confusing and misleading, and thus is insufficient to support the court's grant of summary judgment.

¶ 19    Stelzer contends that the consent form discussed in *Williams v. Tissier,* 2019 IL App (5th) 180046, is "almost identical" to the consent form at issue here. We find the forms are distinguishable. In *Williams*, a woman sued her obstetrician, alleging he was negligent when delivering her baby. *Id.* at ¶ 4. She also sued the hospital under a theory of apparent agency. *Id.* at ¶ 5. After the trial court granted summary judgment to the hospital, the woman appealed. *Id*. at ¶¶ 22-23. The hospital argued that the grant of summary judgment was appropriate based on the "clear and unequivocal" language of its consent form, but the court disagreed. *Id.* at ¶ 46. It relied upon the fact that the independent contractor language was buried within a 16-paragraph, two-page document, "nestled between the authorization for treatment and a disclaimer of the results of that treatment," and noted that the language was not in bold or capital letters and was instead printed in "small [8-point] font, making it difficult to read." *Id.* at ¶ 39. The court also noted that the woman signed several other consent forms – including one that expressly named

her obstetrician and authorized him to provide treatment – and none of these other forms contained the independent contractor language. *Id.* at ¶ 46.

¶ 20    Unlike the consent form at issue in *Williams,* which buried its independent contractor language within the document, the second paragraph of NCH's consent form states in bold, capital letters, "**MY PHYSICIANS, ALLIED PROFESSIONALS ARE NOT NCH EMPLOYEES/AGENTS."** Underneath this subheading, the consent form states, "My care will be managed by physicians who are not employed by or acting as agents of NCH but have privileges at these facilities." Stelzer signed consent forms prior to his catheterization procedure and his heart surgery, and both forms contained the exact same language. In addition, Stelzer signed a surgical consent form prior to his heart surgery, which expressly named Dr. DeBoer and said, "The above physician, the anesthesiologist, if applicable, their assistants, and their physician groups, are not employees or agents of the hospital, but are independent contractors." For these reasons, the consent forms signed by Stelzer are distinguishable from those at issue in *Williams.*

¶ 21    The consent form Stelzer signed is analogous to the consent form at issue in *James by James v. Ingalls Memorial Hospital,* 299 Ill. App. 3d 627 (1998). In *James*, the consent form stated, "the physicians on staff at this hospital are not employees or agents of the hospital but independent medical practitioners who have been permitted to use its facilities for the care and treatment of their patients." *Id.* at 632. The court found the clear and unequivocal language in the consent form signed by the patient sufficient to defeat her apparent agent theory. *Id.* at 633.

¶ 22    Similarly, in *Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835, the patient signed a form which stated,

7

"I have been informed and understand that physicians providing services to me *** such as my personal physician, Emergency Department and Urgent Aid physicians, radiologists, pathologists *** are not employees, agents or apparent agents of Ingalls but are independent medical practitioners who have been permitted to use Ingalls' facilities for the care and treatment of their patients." *Id.* at ¶ 5.

The court found in favor of the hospital because there were "no exceptions to this language, and the disclaimer is not implicitly contradicted elsewhere in the form." *Id*. at ¶ 22.

¶ 23    In *Lamb-Rosenfeld v. Burke Medical Group, Ltd.,* 2012 IL App (1st) 101558, the patient signed a four-paragraph consent form that stated in bold print and capital letters "PHYSICIANS ARE NOT EMPLOYEES OF THE MEDICAL CENTER" and "NONE OF THE PHYSICIANS WHO ATTEND ME AT THE HOSPITAL ARE AGENTS OR EMPLOYEES OF THE HOSPITAL." *Id*. at ¶ 28. The court similarly concluded that a grant of summary judgment to the hospital was appropriate because the independent contractor disclosure contained in the consent form signed by patient was prominent, printed in bold, capitalized letters, and located directly above the signature line. *Id*. at ¶ 30. The court found the fact that the patient's doctor held the title of chief of staff was insufficient to "override the clear unequivocal language in the disclosure statement and create a genuine issue of material fact of apparent agency," especially because there was no evidence that the patient was ever informed of the doctor's title. *Id*. at ¶ 31.

¶ 24    Other courts reviewing similar consent forms have reached the same result. See *Wallace v. Alexian Brothers Medical Center,* 389 Ill. App. 3d 1081, 1092 (2009) (plaintiff could not satisfy the holding out element of apparent agency where the plaintiff knew or should have known about the independent contractor status of the physicians based on the clear concise language in the consent form); *Mizyed v. Palos Community Hospital,* 2016 IL App (1st) 142790,

¶ 62 (finding grant of summary judgment appropriate where the consent form explicitly stated that "all physicians" providing services to patient, including his attending physician, were "independent medical staff physicians and not employees or agents" of the hospital because "[s]uch unambiguous language is akin to the explicit statements relied upon by our court in upholding summary judgment orders dismissing similar vicarious liability claims").

¶ 25    Stelzer argues that the consent form at issue here is more akin to the one at issue in *Schroeder v. Northwest Community Hospital,* 371 Ill. App. 3d 584 (2006), and that "the only real difference between the *Schroeder* consent form and the one at issue here is that 'your personal physician' was changed to 'my physician.' " But this mischaracterizes the language of the consent form at issue in *Schroeder*, which states, "[y]our care will be managed by *your personal physician or other physicians who are not employed by Northwest Community Hospital." Id.* at 587. (Emphasis added.) It was precisely this language that concerned the *Schroeder* court, because it could be reasonably interpreted to mean that the patient's physician was employed by the hospital but the other physicians who might be involved in his care were not. *Id.* at 593-94. Here, by contrast, the consent form Stelzer signed states, "[m]y care will be managed *by physicians who are not employed by or acting as agents of NCH* but have privileges at these facilities." (Emphasis added.) Importantly, it makes no distinction between a patient's personal physician and other physicians.

¶ 26    Stelzer also argues that the "holding out" facts in this case are similar to those found in *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147 (2006), but *York* is critically distinguishable because "nothing in the treatment consent form drafted by [the hospital] and signed by plaintiff alerted plaintiff that [the doctor] was an independent contractor." *Id*. at 196-97. The *York* court made clear that:

"if a patient is placed on notice of the independent status of the medical professionals with whom he or she might be expected to come into contact, it would be unreasonable for a patient to assume that these individuals are employed by the hospital. It follows, then, that under such circumstances a patient would generally be foreclosed from arguing that there was an appearance of agency between the independent contractor and the hospital." *Id*. at 202.

¶ 27    Here, the consent form Stelzer signed put him on notice that his doctors were not employed by the hospital. While "the existence of an independent contractor disclaimer in a consent form" is not "dispositive on the issue of 'holding out,' it is an important factor to consider." *James,* 299 Ill. App. 3d at 633. See also *Wallace,* 389 Ill. App. 3d at 1084 (noting that a signed consent form is an "important factor" because it "explicitly states" the doctors are independent contractors); *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 131 (quoting *Thede v. Kapsas,* 386 Ill. App. 3d 396, 401 (2008)) (finding "such consents are 'almost conclusive' in determining whether a hospital should be held liable for the medical negligence of an independent contractor.")

¶ 28    Stelzer also complains that no one explained the consent form to him or the "legal meaning of what an agent/independent contractor was." However, he signed the consent form directly underneath a phrase that said, "I acknowledge that I have read and understand the foregoing and accept its terms." Moreover, any claim that Stelzer "might not have subjectively understood the consent forms does not create a genuine question of material fact, as we view the issue from the perspective of a reasonable person." *Prutton v. Baumgart,* 2020 IL App (2d) 190346, ¶ 54; see also *Steele,* 2013 IL App (3d) 110374, ¶ 121 ("a competent adult is charged with knowledge of and assent to a document the adult signs and *** ignorance of its contents

10

does not avoid its effect.") We find that the clear, unequivocal language in the consent form Stelzer signed was sufficient to notify him that his doctors were independent contractors and not NCH employees.

¶ 29    Stelzer nevertheless argues that the NCH consent form is "misleading at best, or false at worst" because it states that all of its physicians are not employed by NCH, and questions were raised about the employment status of Dr. Parsons, the doctor who repaired Stelzer's esophageal perforation. Stelzer points to Dr. Parsons' testimony that he is "technically" employed by NCH, whereas NCH contends that Dr. Parsons is not an NCH employee and instead is employed by the NCH Medical Group, a related but "separate entity" from NCH. Stelzer also argues that the consent form is misleading and false because it states that physician assistants "are not employees or agents of NCH," and NCH admits that PA Gilbert, who handled Stelzer's post-operative care, was in fact employed by NCH. But even assuming the consent form misrepresents that all physicians and physician assistants who provide care and treatment are not NCH employees, we do not see how this changes the fact that Stelzer signed a consent form containing clear, unambiguous language, which put him on notice that the doctors whose treatment is at issue here – Dr. Podgorny and Dr. DeBoer – were not employed by NCH. Stelzer makes no argument that he was somehow misled into signing the consent form based on the employment status of Dr. Parsons or PA Gilbert, two health care providers he did not even encounter until after signing the consent forms at issue here, and he points us to no case law that would lead us to conclude otherwise.

¶ 30    In his reply brief, Stelzer raises a new argument – that when the first paragraph of the consent form is read in conjunction with the second paragraph, it "certainly creates confusion to any reasonable reader of this document." But because Stelzer failed to advance this argument in

11

his initial brief, he forfeited it. *People v. Taylor,* 2019 IL App (1st) 160173, ¶ 41. Nevertheless, because the first two paragraphs of the consent form are not contradictory, we find no ambiguity here. The first paragraph states, "I hereby consent to the administration and performance of all tests and treatments by members of the medical staff and personnel at [NCH]…" However, this paragraph is directly followed by a bold, uppercase subheading, which unambiguously states, **"MY PHYSICIANS, ALLIED PROFESSIONALS ARE NOT NCH EMPLOYEES/AGENTS,"** which makes it clear that NCH does not employ its physicians.

¶ 31    We appreciate that NCH marketed itself in its advertisements as "a top hospital in both the Chicago metropolitan area and the State of Illinois" with a "medical staff of more than 1,000 physicians," and agree that these advertisements could lead a reasonable person to believe that NCH actually employed these physicians. A more accurate advertisement would state that NCH does not actually employ any of the physicians on its medical staff, but that probably would not sit well with NCH's marketing folks or its business model. Nevertheless, we have held that a signed consent form like the one at issue here, which clearly and unambiguously informs a patient that the physicians working at the hospital were independent contractors and not employees, supersedes misleading advertising. *Prutton v. Baumgart*, 2020 IL App (2d) 190346, ¶ 55. Moreover, we note that signs in NCH's reception areas also stated that the physicians on NCH's medical staff "are independent practitioners and not [NCH] employees or agents."

¶ 32    For the reasons stated above, we agree with the trial court that Stelzer could not have succeeded in holding NCH liable for Dr. DeBoer and Dr. Podgorny's actions based on a theory of apparent agency. We therefore affirm the trial court's grant of summary judgment to NCH here.

¶ 33                                    III. CONCLUSION

¶ 34     The judgment of the circuit court is affirmed.

¶ 35     Affirmed.