No. 2--00--0110

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

ROBERT STEWART, ) Appeal from the Circuit Court

) of Lee County.

Plaintiff-Appellant, )

)

v. ) No. 94--L--5

)

ROBERT JONES, Indiv. and d/b/a )

Cropmate; CONAGRA, INC.; )

CONAGRA FERTILIZER COMPANY; )

CROPMATE COMPANY; and BETTY L. ) 

JONES, Indiv. and d/b/a ) 

Cropmate, ) Honorable

) Tomas M. Magdich, 

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Robert Stewart, was seriously injured when he fell from the top of a 29-foot storage tank at the Cropmate Company facility in Sublette.  Following the accident, plaintiff filed suit against Conagra, Inc. (Conagra), Conagra Fertilizer Company (Conagra Fertilizer), Cropmate Company (Cropmate), and Robert and Betty Jones, individually and doing business as Cropmate (Joneses), alleging violations of the Structural Work Act (Act) (740 ILCS 150/0.01 
et seq.
 (West 1992)), negligence, and premises liability.  Plaintiff also sought punitive damages from all defendants based on allegations that they acted in reckless disregard for plaintiff's safety.

The trial court granted summary judgment in favor of defendants on all counts of plaintiff's "Third Amended Complaint."  Plaintiff appeals from this judgment and argues that (1) the trial court erred in finding that Conagra and Conagra Fertilizer were not "in charge of the work" under the Structural Work Act; (2) a material issue of fact existed as to whether Cropmate was plaintiff's employer; (3) the Joneses and Cropmate abandoned and therefore waived their affirmative defenses of immunity under the Workers' Compensation Act (820 ILCS 305/5(a) (West 1992));(4) Cropmate and the Joneses waived their immunity defenses through the terms of their lease agreement; and (5) Cropmate and the Joneses were subject to liability under the dual-capacity doctrine.  

The Sublette facility where plaintiff was injured was in the business of selling and applying fertilizers and herbicides.  The business was owned by Cropmate but was known as "Bob Jones Cropmate."  Robert Jones was the manager of the facility.  His wife, Betty, also worked there as a secretary.  The Joneses owned the land upon which the facility was located and leased it back to Cropmate.

Cropmate was a wholly owned subsidiary of Conagra Fertilizer.  Conagra Fertilizer was a wholly owned subsidiary of Conagra.  The president of Cropmate, Rick Frison, was also a vice-president of Conagra Fertilizer.  The parties dispute whether Jack Quinn, Cropmate's division manager for the Sublette facility, also held a position with Conagra Fertilizer. 

Prior to plaintiff's accident, Robert Jones decided to replace one of the fertilizer storage tanks.  Jones called his immediate supervisor at Cropmate, Dan DuPage, and asked whether he should buy a new storage tank.  DuPage advised him that another Cropmate facility in Indiana had a storage tank that was not in use.  DuPage arranged to transfer the tank from the Indiana Cropmate facility to the Sublette facility. 

Plaintiff was a temporary worker at the Sublette facility.  He started working there the day before his accident.  On the day of the accident, Robert Jones had given some instructions to the full-time and temporary employees regarding installing the tank.  The full-time employees testified that they knew what had to be done.  No employees of Conagra or Conagra Fertilizer were present at any time during the tank's installation, nor did they give any instructions to Jones or any of the Sublette employees.     

When the accident occurred, plaintiff was attempting to remove a pipe from the top of the new storage tank.  One of his coworkers observed him wrenching the pipe with great force.  Apparently, the pipe broke loose, causing plaintiff to lose his balance and fall from the tank.

Defendants moved for summary judgment on plaintiff's third  amended complaint.  Conagra and Conagra Fertilizer argued that they could not be held liable under the Structural Work Act because they did not have charge of the work related to installing the storage tank.  They further argued that they owed no duty to plaintiff under common law and therefore could not be held liable for negligence.  Cropmate and the Joneses argued that, as plaintiff's employer and co-employees, respectively, they were immune from suit under the Workers' Compensation Act. 

On December 28, 1999, the trial court entered an order granting defendants' motions for summary judgment.  The court set forth the following reasons for its decision:

"1.  Robert Stewart, Robert Jones, and Betty Jones were all employees of Cropmate Company when plaintiff was injured.

2.  Robert Jones was not an independent contractor.

3.  By entering into a written lease neither Robert nor Betty Jones waived any immunities under the Workers Compensation Act nor did they accept any liability under the Structural Work Act.

4.  Robert Jones and Cropmate Company were 'in charge of the work' under the Structural Work Act.  This operation was entirely a Cropmate Company activity.  Neither Conagra Fertilizer nor Conagra, Inc. was 'in charge of the work.'

5.  Neither Conagra Fertilizer nor Conagra, Inc. owed a common law duty of care to the plaintiff."

Plaintiff filed a timely notice of appeal.

Before we reach the merits of plaintiff's arguments, we note that both parties have made our review of this matter more laborious by failing to comply with Supreme Court Rule 341(e)(7)(177 Ill. 2d R. 341(e)(7)), which requires litigants to include references to the record in the argument section of their briefs.  The failure to comply with the supreme court rules governing appellate briefs may operate as a waiver or may warrant the dismissal of the appeal.  
Scoggin v. Rochelle Community Hospital
, 176 Ill. App. 3d 648, 650 (1988).  We choose not to find waiver or dismiss the appeal in this case, but we admonish counsel for both parties to strictly adhere to Rule 341(e)(7) in the future.

STANDARD OF REVIEW

Pursuant to section 2--1005(c) of the Code of Civil Procedure (735 ILCS 5/2--1005(c) (West 1998)), a court should enter summary judgment if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  A reviewing court should reverse an order granting summary judgment if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law.  
American Family Mutual Insurance Co. v. Hinde
, 302 Ill. App. 3d 227, 231 (1999).  We apply a 
de novo
 standard of review to the trial court's decision to grant summary judgment.  
Hinde
, 302 Ill. App. 3d at 231.  When evaluating the facts, we construe the evidence strictly against the movant and liberally in favor of the nonmoving party.  
Logan v. Old Enterprise Farms, Ltd.
, 139 Ill. 2d 229, 234 (1990).

HAVING CHARGE OF WORK UNDER THE STRUCTURAL WORK ACT

Plaintiff's first contention on appeal is that a genuine issue of material fact existed as to whether Conagra and Conagra Fertilizer "had charge of" the work on the storage tank under the Act.  The trial court ruled that the installation of the storage tank was "entirely a Cropmate activity" and that neither Conagra Fertilizer nor Conagra had charge of the work.   

Section 9 of the Act provides, in relevant part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***."  740 ILCS 150/9 (West 1992). 

Our supreme court has held that "having charge of" is a term of common usage and understanding.  
Larson v. Commonwealth Edison Co.
, 33 Ill. 2d 316, 323 (1965).  The supreme court has not defined the term because "further attempt at definition can only lead to confusion and error."  
Larson
, 33 Ill. 2d at 323.  However, the supreme court has cited with approval 10 factors for courts to consider when deciding this question.  Those factors include whether the defendant (1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had the authority to issue change orders; (7) had the right to stop the work; (8) owned equipment at the jobsite; (9) was familiar with construction customs and practices; and (10) was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.  
Simmons v. Union Electric Co.
, 104 Ill. 2d 444, 452 (1984), citing 
Chance v. City of Collinsville
, 112 Ill. App. 3d 6, 11 (1983).   

Courts should evaluate the totality of the circumstances when determining whether a defendant had charge of the work, although in some cases courts have held that the retained authority to stop the work is sufficient to constitute "having charge."  See 
Axen v. Ockerlund Construction Co.
, 281 Ill. App. 3d 224, 229-30 (1996) (and cases cited therein).  Generally, the question of whether a defendant had charge of work is one of fact, but summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Zukauskas v. Bruning
, 179 Ill. App. 3d 657, 661 (1989).    

Turning to the facts of this case, we note initially that, while plaintiff purports to appeal the entry of summary judgment in favor of both Conagra and Conagra Fertilizer, he does not discuss Conagra in his brief.  Because plaintiff has not presented any argument regarding Conagra, he has both waived that issue (
Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.
, 118 Ill. 2d 389, 401 (1987)) and failed to demonstrate any error in the trial court's entry of summary judgment in Conagra's favor.  Accordingly, we limit our discussion to whether Conagra Fertilizer had charge of the work.

Plaintiff's argument is premised on the fact that Rick Frison and Jack Quinn held positions with both Cropmate and Conagra Fertilizer.  Plaintiff then presumes that, in light of their dual employments, Frison and Quinn had the authority to stop the work or make safety decisions in their capacities as Conagra Fertilizer officers or employees.  Defendants argue that there are no facts to support plaintiff's claim that Frison and Quinn had authority over the tank installation in their capacity as Conagra Fertilizer officers or employees.  We agree with defendants.

While it is clear from the record that Frison, as president of Cropmate, and Quinn, as a division manager of Cropmate, could have stopped work on the tank for safety violations, there is no evidence that they had the authority to do so on behalf of Conagra Fertilizer.  Plaintiff states in his brief that Frison's testimony established that he "had the same authority and responsibility to the Cropmate facilities in his capacity as President [sic] of Conagra Fertilizer Company" and that "there was no difference between his responsibilities for Cropmate Company and Conagra Fertilizer Company."  We do not find this to be an accurate characterization of Frison's testimony.

In Frison's deposition, he testified as follows:

"Q.  As the president of Cropmate and with some experience at working at elevated heights, if you had gone to a retail facility and seen a worker at that facility doing something that you felt was unsafe did you have the authority to tell that worker to stop doing whatever they were doing?

A. I had the authority to fire them.

Q. Okay.  In response to my question, did you have the authority to tell them to stop doing what they were doing?

A. Yes, and subsequently I have the authority to release them from their job if I thought it was unsafe to them and others.

* * *

Q. Was there any difference, as far as your responsibility to the retail facilities, was there any difference in your responsibilities to those facilities as president of Cropmate Company as opposed to vice president of Conagra Fertilizer Company?

In other words, as president of Cropmate Company you had a certain amount of responsibility for the various retail facilities; is that fair?

A. Yes.

Q. Did you have any kind of separate or distinctly different responsibilities to those facilities, to those retail facilities, with your position at Conagra Fertilizer Company?

A. I don't believe so."

Plaintiff's questions to Frison about the interrelationship of his responsibilities for Cropmate and Conagra Fertilizer are unclear at best.  Plaintiff's attorney never directly asked Frison whether he had any authority over Cropmate operations in his capacity as Conagra Fertilizer vice-president.  Even when evaluating Frison's testimony in the light most favorable to plaintiff, it is clear that Frison did not testify that he had the same responsibilities toward Cropmate facilities as Conagra Fertilizer vice-president that he had as the president of Cropmate.  The same analysis applies to Jack Quinn, who plaintiff contends was employed by both Conagra Fertilizer and Cropmate.  Even if we presume that Quinn was employed by both entities, there is simply no evidence that he had any authority over the work on the storage tank in his capacity as a Conagra Fertilizer employee.  In the absence of any other evidence establishing that Conagra Fertilizer, through Frison or any other employee, had the authority to stop the work, plaintiff has failed to raise a genuine issue of fact as to whether Conagra Fertilizer had charge of the work.  Accordingly, Conagra Fertilizer is entitled to judgment as a matter of law.

COMMON-LAW DUTY OF CARE

Plaintiff asserts that Conagra Fertilizer owed him a common-law duty of care.  Citing 
Axen
, he contends that a duty existed because Conagra Fertilizer had charge of the work. 

In 
Axen
, the appellate court reversed the trial court's entry of summary judgment in favor of the defendant on a count under the Structural Work Act because a question of material fact existed as to whether the defendant had charge of the work.  The court then reversed summary judgment in the defendant's favor on the plaintiff's negligence count, holding that whether a defendant had charge of the work determines whether it owed a duty to the plaintiff.  
Axen
, 281 Ill. App. 3d at 232.  As we have already determined that Conagra Fertilizer did not have charge of the work under the Act as a matter of law, 
Axen
 does not apply.
  Plaintiff does not set forth any other facts from which we could find a duty.  Consequently, we conclude that the trial court correctly determined that Conagra Fertilizer did not owe plaintiff a common-law duty of care.

Again, plaintiff did not include Conagra in his discussion regarding a common-law duty, so our analysis is limited to Conagra Fertilizer.

IMMUNITY UNDER THE WORKERS' COMPENSATION ACT

Plaintiff raises several arguments related to Cropmate's and the Joneses' assertions of immunity under the Workers' Compensation Act.  Section 5(a) of the Workers' Compensation Act provides that an employee has no statutory or common-law right to recover damages from his employer or the employer's agents or employees for injuries sustained while engaged in the line of his duty, other than the compensation provided under the Workers' Compensation Act.  820 ILCS 305/5(a) (West 1992).  Plaintiff attempts to avoid the consequences of the exclusive-remedy provision by arguing that Robert Jones, rather than Cropmate, was plaintiff's employer; that the Joneses and Cropmate waived their immunity under the Workers' Compensation Act; and that the Joneses and Cropmate can be held liable under the dual-capacity doctrine.

First we address plaintiff's argument that an issue of material fact existed as to whether Cropmate or Robert Jones was plaintiff's employer.  Plaintiff asserts that there was evidence that Jones was an independent contractor who employed plaintiff.  

Generally, the question of whether one is an agent or employee versus an independent contractor is one of fact.  
Lang v. Silva
, 306 Ill. App. 3d 960, 972 (1999).  However, the question may be decided as a matter of law when the relationship is so clear as to be indisputable.  
Lang
, 306 Ill. App. 3d at 973.  "An independent contractor undertakes to produce a certain result but is not controlled as to the method in which he obtains that result."  
Lang
, 306 Ill. App. 3d at 972.  On the other hand, a principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability.  
Lang
, 306 Ill. App. 3d at 972.   There are no rigid rules for determining whether a person is an employee or agent or an independent contractor, but courts should consider the following factors: the right to control the manner in which the work is performed; the right to discharge; the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment.  
Lang
, 306 Ill. App. 3d at 972.  The right to control the way the work is performed is the predominant factor.  
Lang
, 306 Ill. App. 3d at 972.

According to plaintiff, the evidence showed that Jones was "rather autonomous in the running of Bob Jones Cropmate" because he managed the daily workload and selling, purchased the supplies for the plant, performed his own hiring, and managed the workers.  We agree with defendants that these activities are consistent with Jones's position as an employee manager of the Sublette Cropmate facility and do not show that Jones had complete control over the way in which work was performed.  Further, it is clear from the record that Jones did not have complete autonomy in the management of the Sublette facility.  For example, Jones testified as follows regarding the storage tank at issue:

"I went to my immediate supervisor [Dan DuPage] and asked where we could locate a tank or if I should purchase one, and he said [']I think we have one at another location that we're not using and we could just get it transferred over to you.['] "

If performance of the work at the Sublette facility had been completely within Jones' discretion, he would not have called DuPage to ask for direction regarding replacing the storage tank.

More important is the ample evidence, which plaintiff ignores, demonstrating that Jones was an employee of Cropmate.  Jones testified that Cropmate paid his salary. According to the uncontroverted affidavit of Rick Frison, Jones was a Cropmate employee in 1993 and received a W-2 form for tax purposes from Cropmate.  In addition, on May 9, 1991, Jones signed an "Employee Agreement," which states, in relevant part, that he is or is about to become an employee of Cropmate.  In light of this uncontroverted evidence, it is so clear as to be indisputable that Jones was an employee of Cropmate, not an independent contractor.   

The evidence also showed, as a matter of law, that plaintiff was employed by Cropmate.  On March 6, 1993, plaintiff signed a document entitled "Company Policy for Temporary Employees," which stated in two places that plaintiff was a temporary employee of Cropmate.  Plaintiff also received a W-2 form for 1993 indicating that Cropmate was his employer.  Following the accident, plaintiff filed an application for adjustment of his worker's compensation claim that named Cropmate as his employer.  There is no evidence whatsoever that plaintiff was employed by Jones.  Accordingly, we agree with the trial court that both Jones and plaintiff were employees of Cropmate.  

Plaintiff argues next that the Joneses and Cropmate abandoned their assertion of immunity under the Workers' Compensation Act and thereby waived such immunity.  Plaintiff further contends that the Joneses and Cropmate waived their immunity through their lease agreement.  Defendants deny that they abandoned or otherwise waived the immunity afforded by the Workers' Compensation Act.

 We first address plaintiff's contention that Cropmate and the Joneses abandoned their assertion of the immunity defense.   The record reveals that defendants filed a motion to dismiss portions of plaintiff's original complaint, arguing in part that the Joneses and Cropmate were immune from liability under the Workers' Compensation Act.  It appears that the parties never briefed the motion to dismiss and the trial court never ruled on it.  On April 5, 1995, plaintiff filed a "Second Amended Complaint."  Defendants moved to dismiss this complaint on the ground that the repeal of the Structural Work Act, effective February 14, 1995, barred plaintiff's cause of action.  It appears from the record that the trial court stayed plaintiff's cause of action until it was determined whether the repeal of the Act affected plaintiff's cause of action.  The case resumed after the supreme court determined that the repeal of the Act did not apply retroactively to terminate causes of action that accrued before the repeal of the Act.  See 
Atkins v. Deere & Co.
, 177 Ill. 2d 222 (1997).

On March 5, 1999, plaintiff filed a "Third Amended Complaint."  In their answers to the third amended complaint, Cropmate and the Joneses raised immunity under the Workers' Compensation Act as an affirmative defense.  They then filed motions for summary judgment based on that affirmative defense.

Plaintiff asserts that, because defendants did not present for hearing their motion to dismiss raising the immunity defense and did not raise the defense again until they answered the third amended complaint, they waived their immunity defense.  We find no merit in this argument.  

Plaintiff cites no case law finding waiver under circumstances similar to those in the case before us.  To the contrary, in 
Sobczak v. Flaska
, 302 Ill. App. 3d 916, 920 (1998), the defendant failed to plead the affirmative defense of immunity under the Workers' Compensation Act but raised it in a motion for summary judgment.  The court held that any waiver was technical and did not prejudice the plaintiff.  Thus, the court declined to apply waiver.  
Sobczak
, 302 Ill. App. 3d at 920.

We too decline to apply waiver.  Here, defendants affirmatively pleaded the immunity defense in their answers to the third amended complaint.  They also raised the issue earlier, in their motion to dismiss plaintiff's original complaint.  The record is silent as to why this motion was never brought for hearing.  While we do not condone the failure to notice the motion to dismiss for hearing, it is plain to us that any waiver by defendants was purely technical and did not prejudice plaintiff.

Plaintiff's next contention is that the Joneses and Cropmate waived the protections of the Workers' Compensation Act through their lease agreement.  Plaintiff bases this argument on the portion of the agreement in which the Joneses agreed to "comply with all laws, rules and regulations, orders, and ordinances applicable to the Premises and the operations conducted thereat."  According to plaintiff, this meant that the Joneses had to comply with the Structural Work Act, a law of Illinois at the time, and that they thereby waived any immunity for violations of the Structural Work Act.  We find no merit to plaintiff's imaginative interpretation of the lease terms.  Plaintiff cites no authority for the proposition that an agreement to comply with state law operates as a waiver of an immunity afforded by state law.

The lease agreement further stated that Cropmate would indemnify the Joneses and hold them harmless against losses to third parties caused by acts or omissions of Cropmate, its employees, or its agents arising out of Cropmate's business on the premises.  Plaintiff maintains that Cropmate thereby agreed to assume liability for violations of the Structural Work Act and waived its immunity.  As we determined above, the Joneses did not waive their right to immunity under the Workers' Compensation Act by the terms of their lease agreement with Cropmate.  For this reason, plaintiff's argument based on Cropmate's agreement to indemnify the Joneses must also fail.  We note further that plaintiff failed to cite any authority in support of this argument, in violation of Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)).

DUAL-CAPACITY DOCTRINE

Plaintiff's final contention is that, because the Joneses could be held liable under the dual-capacity doctrine, the granting of summary judgment in their favor was erroneous.  Plaintiff also contends that Cropmate may be held liable under the dual-capacity doctrine as the Joneses' indemnitor under the lease agreement.  We disagree with both contentions.

Under the dual-capacity or dual-persona doctrine, one who is protected by the exclusive-remedy provision of the Workers' Compensation Act may become liable in tort if he operates in a second capacity that creates obligations independent of those imposed upon him as an employer.  
Guerino v. Depot Place Partnership
, 273 Ill. App. 3d 27, 32 (1995).  A plaintiff has the burden of satisfying a two-part test and establishing (1) the second capacity generates obligations unrelated to those flowing from the first, that of the employer; and (2) a second, distinct, legal persona of the employer.  
Guerino
, 273 Ill. App. 3d at 32.  This test applies to co-employees who are sued as defendants as well as employers.  
Reynolds v. Clarkson
, 263 Ill. App. 3d 432, 435 (1994).  A plaintiff cannot satisfy the elements of the test when the defendant's duties are so intertwined that his conduct in the second role does not generate any obligations that are unrelated to the duties flowing from his first role as employer or agent of the employer.  
Guerino
, 273 Ill. App. 3d at 32.  In other words, if the defendant's duties in his second capacity are related to his duties in his first capacity as employer, agent, or co-employee, he remains immune from liability.

The facts of the case before us are quite similar to those in 
Reynolds
, in which the court held that the dual-capacity doctrine did not apply to a defendant who was the plaintiff's boss as well as the owner of the premises where the plaintiff was injured.  
Reynolds
, 263 Ill. App. 3d at 435.   The defendant in 
Reynolds
 owned the land on which a grain elevator was located and leased the land back to the plaintiff's employer.  The defendant was also the president, chief operating officer, and a salaried employee of Clarkson Grain Company, Inc., the company that employed the plaintiff.  
Reynolds
, 263 Ill. App. 3d at 433-34. 

The court in 
Reynolds
 held that the defendant's duty as the plaintiff's boss was to furnish the plaintiff with a safe place to work.  As a landowner, the defendant had a similar duty to ensure that his premises were safe.  Accordingly, the court held that the defendant's duties under both capacities were related; therefore, the defendant was immune from suit.  
Reynolds
, 263 Ill. App. 3d at 435.

The same analysis applies to the case before us.  The Joneses' duties as landowners were related to their duties as plaintiff's co-employees.  Plaintiff argues that 
Reynolds
 is distinguishable because the Joneses' dual capacity is based on the obligations they assumed in the lease agreement rather than their common-law obligations as landowners.  This argument misses the mark.  Plaintiff has presented no evidence that under the lease agreement the Joneses assumed any duties that were additional to or different from those they had under common law.   As landowners, the Joneses were required to comply with the laws of this state regardless of whether they agreed to do so in writing.  The duties the Joneses had pursuant to the lease agreement were no different from their common-law duty as landowners to keep the premises safe.  Accordingly, the dual-capacity doctrine does not apply to the Joneses or to Cropmate as the Joneses' indemnitor under the lease agreement.  

For the reasons set forth above, we affirm the circuit court of Lee County's entry of summary judgment in favor of all defendants on all counts of plaintiff's third amended complaint.

Affirmed.

GEIGER and HUTCHINSON, JJ., concur.