2021 IL App (1st) 200834-U

SECOND DIVISION
December 14, 2021

No. 1-20-0834

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| TRACEY W. BROWN, Special Administrator of the Estate of Theresa T. Jeffries, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2018 L 4660 |
| MERCY HOSPITAL AND MEDICAL CENTER, an Illinois Corporation, | ) ) ) | |
| Defendant-Appellee | ) ) | |
| (Amit Kumar, M.D., and Paul Jones, M.D., | ) ) | The Honorable Kathy M. Flanagan, |
| Defendants). | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

*HELD*: Trial court's grant of summary judgment in favor of defendant hospital with respect to claim of apparent agency was proper where, based on the signed consent

form and accompanying considerations, plaintiff was unable to meet the legal elements of such a claim.

¶ 1         Plaintiff-appellant Tracey W. Brown, special administrator of the estate of Theresa T. Jeffries, deceased (plaintiff) brought suit against defendant-appellee Mercy Hospital and Medical Center, an Illinois corporation (defendant), and Drs. Amit Kumar and Paul Jones (as named)[1] sounding in medical malpractice based on the theories of actual and apparent agency. Following discovery, defendant moved for summary judgment and the trial court granted its motion. Plaintiff appeals, contending that the trial court erred in granting summary judgment in defendant's favor because a genuine issue of material fact remains with respect to the issue of apparent agency. She asks that we reverse the trial court's decision and remand with directions that the matter proceed to trial on that issue. For the following reasons, we affirm.

¶ 2                                  BACKGROUND

¶ 3         The following facts are taken from the record and are undisputed by the parties.

¶ 4         On August 21, 2017, decedent went to defendant's cardiac unit where she underwent a catheterization procedure in the unit's lab. Dr. Jones ordered a cardiac catheterization and Dr. Kumar performed it. Decedent died during the procedure.

¶ 5         Plaintiff, decedent's daughter, filed suit alleging medical malpractice in connection with the care provided to decedent by defendant and Drs. Jones and Kumar. She asserted that Drs.

---

[1] Drs. Kumar and Jones are not parties to this appeal.

2

Jones and Kumar negligently recommended and performed the procedure, and she sought to hold defendant vicariously liable for their conduct based on both actual and apparent agency.

¶ 6     In his deposition, Dr. Kumar, a board-certified cardiologist, testified that he was not, nor had ever been, an employee of defendant. He stated that, instead, he was employed by Chicago Heart and Vascular Consultants (CHVC), a practice group separate and distinct from defendant that merely provided cardiology services at the hospital. CHVC maintains an office on defendant's twelfth floor. Dr. Kumar noted that, on the day in question, he wore a lab coat and badge with his name as well as defendant's name, and that these did not bear CHVC's name. He also testified that he met decedent for the first time in defendant's lab on the day of the procedure and that he did not discuss his employment status with her.

¶ 7     In his deposition, Dr. Jones, a board-certified cardiologist, testified that he was not an employee of defendant but, rather, he was employed by, and was president of, the CHVC practice group.[2] He ordered the cardiac catheterization procedure for decedent, as he was operating as the lab's medical director that day. Dr. Jones may have worn a lab coat and name badge with defendant's name on it, similar to what Dr. Kumar was wearing that day.

¶ 8     Decedent signed defendant's consent form on August 16, 2017, at the outset of her hospital admission that led to the procedure at issue.[3] She also signed four consent forms in the months leading up to this admission, when she had visited defendant hospital on April 12,

_____

[2] Plaintiff notes in the fact section of her brief on appeal that in his deposition, Dr. Jones stated he, at some point, held administrative positions at defendant hospital, which included medical director of cardiovascular services. To the extent that this might go to actual agency, as we note below herein, the trial court granted summary judgment in favor of defendant on that issue and plaintiff has chosen not to appeal that portion of its decision.
[3] The cardiac catheterization procedure took place five days later, as noted, on August 21.

3

No. 1-20-0834

May 23, July 26, and August 10, 2017.[4]  All five of the consent forms, signed by decedent, are identical.  On the first page, they state, in relevant part:

"**2. PHYSICIAN SERVICES:** I understand and agree that [defendant] does not control or direct my physicians' independent medical judgement regarding the care and treatment of me.  I understand that my physicians who provide services to me at [defendant] may not be employed or paid by [defendant].  Non-employed, independent medical contractors include, emergency department physicians, anesthesiologists, radiologists, pathologists, hospitalists, on-call and consulting physicians, surgeons, specialists, obstetricians/nurse midwifes, gynecologists, pediatricians, neonatologists, cardiologists, other specialists and allied health providers working with these physicians.  They have been permitted to use the hospital's facilities and have chosen our facilities as the place they wish to treat and care for their private patients.

**My decision to seek care from [defendant] is not based upon any understanding or representation or advertisement that the physicians who will be treating me are employees or agents of the hospital.  If I wish to know if my physician is employed by the hospital, I will ask the physician.  I have a right to select my own physician and the right to change any of my physicians at any time.**"  (Emphasis in original.)

Immediately following these paragraphs, a line for initials appears next to this statement:

---

[4] None of these instances are relevant to the events herein, other than, for purposes of this cause, to demonstrate that decedent had previously and recently signed the same consent form.

4

"_____ (Initial) I acknowledge and understand that the hospital uses independent medical contractors to provide various services as described above." Decedent's initials appear in the space cited on the first page of each of the five consent forms, along with her full signature, date and time signed on the last page of each of the five forms.[5]

¶ 9       Following discovery, defendant moved for summary judgment on both plaintiff's actual agency claim and her apparent agency claim. First, with respect to the actual agency claim, defendant argued that it did not employ either Dr. Kumar or Dr. Jones. Second, with respect to the apparent agency claim, defendant argued that it had not "held out" either doctor as its agent and there was no evidence that decedent relied on an appearance of agency between it and the doctors. Defendant also cited the five consent forms signed by decedent, which it argued showed her understanding that Drs. Kumar and Jones were only consulting physicians and, pursuant to the consent forms' language, that consulting physicians are not its agents.

¶ 10      In response to defendant's motion, plaintiff conceded that neither Dr. Kumar nor Dr. Jones were actual agents or employees of defendant. However, with respect to apparent agency, plaintiff insisted that the facts did not show decedent had reason to know the doctors were not employees or agents of defendant. She also argued that decedent did not read or understand the consent forms and that the forms were ambiguous, as they contained language in section 2 stating that doctors simply "may not be employed" by defendant.

---

[5] At her deposition, plaintiff confirmed that her mother initialed and signed all five consent forms; there is no dispute that what appears in the record are decedent's initials and signatures.

¶ 11 In a Memorandum Opinion and Order, the trial court granted defendant's motion for summary judgment. First, the court made clear that plaintiff conceded there was no actual agency, so that portion of her claim was terminated.

¶ 12 The court next turned to the elements required to prove apparent agency. After discussing these, it noted that a signed consent form which contains clear and unambiguous language is an important factor in determining vicarious liability related to hospitals. With respect to the instant cause, the court found that the consent form decedent here signed at the outset of her hospitalization leading to the procedure at issue, along with the four identical ones she signed only months before, were unambiguous. It acknowledged plaintiff's claim that the forms contain language which states that physicians who provide services at the hospital "may not be employed" by defendant, but the court made clear that the remainder of the section states that "non-employed, independent contractors include consulting physicians and cardiologists," and that Drs. Jones and Kumar were, indeed, both consulting physicians and cardiologists. Additionally, the court noted the second paragraph of section 2 of the consent forms which states that the patient's "**decision to seek care**" from defendant "**is not based upon any understanding or representation or advertisement that the physicians who will be treating [her] are employees or agents of the hospital.**" (Emphasis in original.) Together, the court found that these statements in the consent form, along with the bold-face type, the fact that the portion about seeking care is set apart from the other text, and that decedent's initials abutted the acknowledgement that defendant uses independent physicians, all made the form clear and unambiguous, thereby defeating plaintiff's claim of

holding out. The court explicitly concluded that there is "nothing confusing or contradictory" about the disclaimers set out in the consent form.

¶ 13    The court then went on to address plaintiff's claims that decedent may not have read or understood the form. The court found that, first, plaintiff did not dispute that decedent signed it and, second, regardless of this, there was no evidence to show that defendant acted in a manner which would lead a reasonable person to conclude that Drs. Jones and Kumar were its employees or agents, or that defendant knew or acquiesced in any of their actions. The court further found that, even if a question of fact could be raised as to reliance on the part of decedent, there was no evidence of such in the record and, with a clear showing that there was no holding out, such a claim could not stand. Accordingly, with the concession of no actual agency, the court found for defendant with respect to plaintiff's claim of apparent authority and granted summary judgment it its favor.

¶ 14                                    ANALYSIS

¶ 15    Plaintiff's sole contention on appeal is that the trial court erred in granting summary judgment in favor of defendant. She insists that the facts in the record, and particularly, the consent form at issue, create a triable issue of fact with respect to apparent agency. Principally, she claims that the phrase "may not be" employees or agents of the hospital as found in the second sentence of the first paragraph of section 2 of the consent form, as opposed to more restrictive language such as "are not," makes that section unclear and ambiguous as to whether defendant held out Drs. Kumar and Jones as its agents. She further

claims that, because the consent form does not leave "zero doubt as to this issue," reversal is required. We disagree.

¶ 16     The law with respect to summary judgment and the doctrine of apparent authority when it comes to the question of a hospital's liability for the alleged negligent acts of a physician providing care at that hospital are well established.

¶ 17     First, summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001); accord *Purtill v. Hess*, 111 Ill. 2d 229 (1986); *Zakoff v. Chicago Transit Authority*, 336 Ill. App. 3d 415, 20 (2002). While this relief has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris*, 197 Ill. 2d at 35, quoting *Purtill*, 111 Ill. 2d at 240. Moreover, while a plaintiff need not prove her entire cause during summary judgment, she must present some evidentiary facts to support the elements of her cause of action. See *Wallace v. Alexian Bros. Medical Center*, 389 Ill. App. 1081, 1085 (2009), citing *Bellerive v. Hilton Hotels Corp.*, 245 Ill. App. 3d 933, 936 (1993). If the plaintiff fails to establish even one element of the cause of action, summary judgment in favor of the defendant is wholly proper. See *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007). Appellate review of a trial court's grant of summary judgment is *de novo* (see *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370 (2007); accord *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102

(1992); *Zakoff*, 336 Ill. App. 3d at 420), and reversal will occur only if we find that a genuine issue of material fact exists (see *Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988)). See also *Wallace*, 389 Ill. App. 3d at 1085.

¶ 18    Next, when it comes to the doctrine of apparent authority, we note that, ordinarily, whether such an agency relationship exists is a question of fact. See *Stewart v. Jones*, 318 Ill. App. 3d 552, 560-61 (2001). However, when only one conclusion can be drawn from undisputed facts presented, a court may properly decide this question as a matter of law, pursuant to the principles of summary judgment just discussed. See *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 632 (1998).

¶ 19    The doctrine of apparent authority, as related to medical negligence, states that a hospital can be held vicariously liable for the negligent acts of a physician providing care at that hospital, regardless of whether the physician is an independent contractor. See *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 524 (1993). However, it is undisputed that the burden rests with the party asserting the existence of apparent authority to both plead and prove the required legal elements of this cause of action, of which there are three. See *Wallace*, 389 Ill. App. 3d at 1086; accord see also *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 172 (2003) ("burden of proving the existence of an agency relationship is on the party seeking to charge the alleged principal"). These elements are:

> " '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of

authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Gilbert*, 156 Ill. 2d at 525, quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 207-08 (1988).

Accord *York v. Rush -Presbyterian—St. Luke's Medical Center*, 222 Ill. 2d 147, 193 (2006) (reaffirming *Gilbert*'s "analytical framework" regarding apparent agency claims against hospitals). Again, although a plaintiff is not required to prove her entire case at the summary judgment stage, she is still required to present at least a factual basis that would arguably entitle her to judgment in her favor. See *Wallace*, 389 Ill. App. 3d at 1086. "This includes all three elements" of an apparent agency hospital claim just described, and the failure to prove even one of them renders summary judgment in favor of the hospital proper. *Wallace*, 389 Ill. App. 3d at 1086, citing *Bagent*, 224 Ill. 2d at 163, and *Bellerive*, 245 Ill. App. 3d at 936.

¶ 20        Based on the record before us, we find that plaintiff here did not satisfy all the requirements of an apparent agency claim and, therefore, the trial court's grant of summary judgment in favor of defendant was wholly proper.

¶ 21        With respect to the first two elements at issue, known together as the "holding out" component of apparent authority, plaintiff was required to present some evidence that defendant's or Drs. Kumar and Jones' actions created the appearance of authority and that defendant had knowledge of or acquiesced in these. See *Wallace*, 389 Ill. App. 3d at 1086-

87; *James*, 299 Ill. App. 3d 627 (1998).  However, the law is clear that, if decedent knew or should have known that Drs. Kumar and Jones were independent contractors, then defendant cannot be held vicariously liable.  See *Gilbert*, 156 Ill. 2d at 522 ("[i]f a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable").  Therefore, if decedent was placed on notice of the independent contractor status of these doctors, "it would be unreasonable" for her to assume that they were employed by defendant and, thus, she (and plaintiff here) could not sustain an apparent agency claim against defendant.  *York*, 222 Ill. 2d at 202 ("under such circumstances a patient would generally be foreclosed from arguing that there was an appearance of agency between the independent contractor and the hospital").

¶ 22       This brings us to an examination of patient consent forms and notice, which is the crux of the instant appeal.

¶ 23       While plaintiff is correct that hospital consent forms containing independent contractor disclaimers are not always dipositive on the issue of "holding out," they certainly are very critical in an examination of notice and what a patient knew with respect to the treating physicians' employment status.  See *Wallace*, 389 Ill. App. 3d at 1087, citing *James*, 299 Ill. App. 3d at 633.  "[W]hether a patient signs a hospital consent to treatment form that contains clear and unambiguous independent contractor disclaimer language is an important factor to consider *** because it is unlikely that a patient who signs such a form can reasonably believe that her treating physician is an employee or agent of a hospital when the form contains specific language to the contrary."  *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*,

11

2012 IL App (1st) 101558, ¶ 26. Thus, with the existence in evidence of a signed treatment consent form which expressly provides that the physicians on staff at the hospital are not employees or agents of the hospital, it becomes incredibly difficult for a plaintiff to prove the holding out element of apparent agency. See *James*, 299 Ill. App. 3d at 633. As our state supreme court has declared, if "the patient is in some manner put on notice of the independent status of the professionals with who [s]he might be expected to come into contact[,]" the hospital cannot be held vicariously liable. *York*, 222 Ill. 2d at 182.

¶ 24　　　　In the instant cause, there two important facts that are undisputed. First, Drs. Kumar and Jones are both physicians who consulted on decedent's care and, more specifically, are cardiologists; plaintiff was admitted into defendant hospital and underwent a cardiological procedure which was performed by them in defendant's cardiac unit lab. Second, decedent signed defendant's patient consent form prior to the procedure.

¶ 25　　　　What is disputed by the parties is the clarity of section 2 of the consent form. That section, which appears on the first page of the form and is the only that deals with physician treatment of patients, states, again, *in toto*:

> "**2. PHYSICIAN SERVICES:** I understand and agree that [defendant] does not control or direct my physicians' independent medical judgement regarding the care and treatment of me. I understand that my physicians who provide services to me at [defendant] may not be employed or paid by [defendant]. Non-employed, independent medical contractors include, emergency department physicians, anesthesiologists, radiologists, pathologists, hospitalists, on-call and consulting

physicians, surgeons, specialists, obstetricians/nurse midwifes, gynecologists, pediatricians, neonatologists, cardiologists, other specialists and allied health providers working with these physicians. They have been permitted to use the hospital's facilities and have chosen our facilities as the place they wish to treat and care for their private patients.

**My decision to seek care from [defendant] is not based upon any understanding or representation or advertisement that the physicians who will be treating me are employees or agents of the hospital. If I wish to know if my physician is employed by the hospital, I will ask the physician. I have a right to select my own physician and the right to change any of my physicians at any time.**" (Emphasis in original.)

At the end of the section, a line for initials appears next to the following statement:

"_____ (Initial) I acknowledge and understand that the hospital uses independent medical contractors to provide various services as described above."

In addition to, again, her signature, date and time on the last page of the consent form, plaintiff's initials appear at the end of section 2 in the space provided, as just described. And, again, the record is clear that decedent signed this same consent form in the same manner—full signature, date and time on the last page and initials in the space provided at the end of section 2 on the first page—on four other occasions during which she sought treatment at defendant hospital. All of these occasions were within four months of signing the fifth (and identical) form involved in the instant appeal, with the fourth one only six days prior.

13

¶ 26    Plaintiff insists that section 2 is unclear and ambiguous. She focuses her argument on the four-word phrase in the second sentence of the section's first paragraph that says physicians who provide services "may not be employed" by defendant. Relying on *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584 (2006), and *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826 (2009), wherein reviewing courts determined the consent forms at issue to be ambiguous, she claims that, because the phrase cited does not unequivocally "eliminate all possibility" that Drs. Kumar and Jones were employees or agents of defendant, a question of fact as to defendant's vicarious liability exists. Defendant, meanwhile, urges that, when section 2 is read in its entirety, it inherently and clearly notified decedent that Drs. Kumar and Jones were independent contractors. Relying on *Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835, and *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, wherein reviewing courts determined the consent forms at issue to be clear, defendant claims that section 2 is unambiguous in that Drs. Kumar and Jones were not its apparent agents, leaving no material question of fact.

¶ 27    Based on our review of the record and case law, we find that defendant is correct.

¶ 28    The cases cited by the parties have been discussed by our reviewing courts repeatedly, with *Schroeder* and *Spiegelman* at one end of the consent form language clarity spectrum and *Frezados* and *Mizyed* at the other. In *Schroeder*, 371 Ill. App. 3d at 587, the patient-decedent and/or his wife had signed the same multi-section hospital consent form on three occasions. In one section, the hospital disavowed any apparent agency relationship with the phrase "[y]our care will be managed by your personal physician or other physicians who are not

14

employed by [the hospital]," but that phrase was immediately followed by the statement that the physician's care "is supported by a variety of individuals employed by [the hospital]," and soon thereafter stated that "[y]our physician may also decide to call in consultants *** [who] are not employed by [the hospital]." *Schroeder*, 371 Ill. App. 3d at 587. In maintaining that the trial court's grant of summary judgment in favor of the hospital was inappropriate, the plaintiff argued that this language made the form confusing as to whether the doctors who would be caring for the decedent were or were not hospital employees. See *Schroeder*, 371 Ill. App. 3d at 589. The reviewing court agreed, finding that the differing language about which physicians were employed by the hospital was confusing and misleading and, thus, reversed summary judgment. See *Schroeder*, 371 Ill. App. 3d at 589.

¶ 29    Likewise, in *Spiegelman*, 392 Ill. App. 3d at 829, the plaintiff signed a nine-paragraph consent form wherein the third paragraph stated, "I am aware that during my visit ***, hospital employees will attend to my medical needs as may be necessary," but the fourth paragraph stated, "I understand that the Emergency Department physician and my attending physician are independent contractors." *Spiegelman*, 392 Ill. App. 3d at 829. Upon examination of this language, the reviewing court upheld a jury verdict in favor of the plaintiff and against the defendant hospital, finding that the two paragraphs made the consent form ambiguous and confusing as to which doctors were employees of the hospital and which were independent contractors. See *Spiegelman*, 392 Ill. App. 3d at 837.

¶ 30    At the other end of the spectrum lie *Frezados* and *Mizyed*. In *Frezados*, 2013 IL App (1st) 121835, ¶ 5, the plaintiff signed a consent form which stated that "physicians providing

services to me ***, such as my personal physician, Emergency Department and Urgent Aid physicians, radiologist, pathologists, anesthesiologists, on-call physicians, consulting physicians, surgeons, and allied health care providers working with those physicians are not employees, agents or apparent agents of [the defendant hospital] but are independent medical practitioners" for which he would be billed separately; signs were also posted throughout the hospital to the same effect. The reviewing court there found the form to be not at all comparable to those in *Schroeder* and *Spiegelman*, as it was clear and concise that none of the physicians at the defendant hospital were its employees, agents, or apparent agents, but only independent contractors. See *Frezados*, 2013 IL App (1st) 121835, ¶ 21 (distinguishing *Schroeder* and *Spiegelman*). There were no other paragraphs or phrases that provided an exception to this or that contradicted the cited language in any way and, thus, as the plaintiff could not raise a factual question as to the holding out element, summary judgment in favor of the defendant hospital was proper. See *Frezados*, 2013 IL App (1st) 121835, ¶¶ 22, 25.

¶ 31   Similarly, in *Mizyed*, 2016 IL App (1st) 142790, ¶ 15, perhaps the clearest case of all, the plaintiff-patient signed a consent form which stated, in bold print: "all physicians providing services to me, including emergency room physicians, radiologists, pathologists, anesthesiologists, my attending physician and physician consultants, are independent medical staff physicians and not employees or agents of [the defendant hospital]." (Emphasis omitted.) The plaintiff signed this same form some five different times. In reviewing this language, the court noted that while the form had a multipart format with various provisions like those in *Schroeder* and *Spiegelman*, this did not undermine the language used therein.

16

Instead, the court found that the form signed by the plaintiff was explicit that "all physicians providing services" to him were independent contractors, and there was nothing else in the form that dealt with physician services so as to create any ambiguity with respect to the clear disavowal of any apparent agency by the defendant-hospital. See *Mizyed*, 2016 IL App (1st) 142790, ¶¶ 60-62. See also *Delegatto v. Advocate Health and Hospitals*, 2021 IL App (1st) 200484, ¶¶ 9, 61 (summary judgment in favor of hospital affirmed where consent form clearly and unambiguously resolved any question of apparent agency with the following language: " 'I understand that all physicians *** furnishing services to me *** are independent contractors and are not employees or agents of the hospital' " (emphasis omitted)).

¶ 32     In our view, while the instant cause lies somewhere in between *Schroeder*/*Spiegelman* and *Frezados*/*Mizyed*, we conclude that it stands much closer to the latter than the former.

¶ 33     Plaintiff is correct that section 2 of the consent form here does contain the phrase "may not be employed" which, admittedly, is permissively exclusive as opposed to, for example, language containing the phrase "are not employed," which would be clearer, more direct and, perhaps, more practicable. If such language had been used, we, most likely, would not be here. And, of course, as much as the law prefers the clearest of phrases and terminology, we cannot rewrite this consent form. But, far from plaintiff's contention that the phrase used "frankly says nothing," we find that there is, instead, much language here that inherently put decedent on notice that Drs. Kumar and Jones were not employees or agents of defendant.

17

¶ 34    Primarily, we cannot, as plaintiff would have us, isolate our reading of the section to solely the four words she cites in the second sentence of that first paragraph. Parsing out a paragraph, or even a document, for that matter, in such a manner is a dangerous precedent and in direct contrast to our legal principles that contracts and documents should be read as a whole. We cannot approach our review in such a piecemeal fashion. Accordingly, once we do look at section 2 as a whole, it becomes clear that this consent form is more like those found in the *Frezados*/*Mizyed* line of case law.

¶ 35    Immediately after the phrase plaintiff cites, the next sentence begins by introducing who defendant's "[n]on-employed, independent medical contractors" are. It then provides an itemized list and states, precisely, that this group consists of "emergency department physicians, anesthesiologists, radiologists, pathologists, hospitalists, on-call and **consulting physicians**, surgeons, **specialists**, obstetricians/nurse midwifes, gynecologists, pediatricians, neonatologist, **cardiologists**, and other specialists and allied health providers working with these physicians." (Emphasis added.) As we have discussed, Drs. Kumar and Jones were consulting physicians, namely, following decedent's admission to defendant hospital on August 16, 2017, consultation with doctors was had and it was recommended at some point during her stay that she undergo a procedure in the cardiac lab, which took place five days later, on August 21, 2017, a day when Drs. Kumar and Jones were working there. Moreover, and unmistakably, Drs. Kumar and Jones were cardiologists and, as such, specialists. All of these groups—"consulting physicians," "specialists" and "cardiologists"—are specifically identified in section 2 of the consent form as "[n]on-employed, independent medical

18

contractors." They are not, and cannot be, considered tied to the sentence before this, on which plaintiff relies, which simply states that "my physicians who provide services to me at [defendant hospital] may not be employed" by it. Yes, considering such language, "my physicians who provide services to me" are physician who may be employed, but just as equally, the possibility is that they may not be; this, by certain standards, may be considered ambiguous. However, from that general language, the consent form moves immediately into specificity in the very next sentence. With that specificity, the form clearly forecloses any possibility of employment by defendant of Drs. Kumar and Jones. They are set apart from any potential permissive exclusivity by the form's statement that they, distinctly, as "consulting physicians" and/or "specialists" and/or "cardiologists," are, without a doubt, "[n]on-employed, independent medical contractors." The consent form's specific reference to the subgroups listed, to which Drs. Kumar and Jones undeniably belong (in any one of three ways), erases any internal inconsistency, should any exist, between the general phrase "may not be employed" as cited by plaintiff that begins section 2 and the very specific and itemized list of independent contractors who, definitively, are not employed, as explained in the remainder of that section.

¶ 36    In addition, there are several other considerable factors with respect to the instant consent form that further support our conclusion. In examining these, we take a page directly from a most recent (and very similar) decision regarding vicarious liability and consent form clarity issued by our very Court, cited earlier herein: *Delegatto*. There, we obviously first examined the consent form language cited by the parties. Very helpful to the defendant hospital, and

19

quite determinative of our decision to affirm summary judgment in its favor, was that the paragraph at issue contained the very explicit and clear phrase, "all physicians *** furnishing services to me *** are independent contractors and are not employees or agents." See *Delegatto*, 2021 IL App (1st) 200484, ¶¶ 36- 37. We held that "all physicians" meant just that: the broad category of every physician who provided treatment to the decedent-patient while she was at defendant hospital, which included the physician at issue (a surgeon), the physician assistant, and a practice group. See *Delegatto*, 2021 IL App (1st) 200484, ¶ 37 (upholding summary judgment in favor of the defendant hospital based on clarity of consent form language which could only mean no physician was excluded from its non-agency provision); accord *Mizyed*, 2016 IL App (1st) 142790, ¶¶ 60-62; *Prutton v. Baumgart*, 2020 IL App (2d) 190346, ¶ 54 (same, also using language "all physicians" as being independent contractors).

¶ 37    However, instead of stopping there, we went on to examine other factors surrounding the consent form, as well—factors that further supported our conclusion regarding the clarity of non-agency. For example, we noted that the phrase at issue which contained the words "all physicians" also contained a specific reference to subgroups of physicians. That is, the complete phrase read, " 'all physicians, nurse practitioners and physician assistants furnishing services to me, including emergency department, radiologists, anesthesiologists, pathologists, and the like, are independent contractors and are not employees or agents of the hospital.' " (Emphasis omitted.) *Delegatto*, 2021 IL App (1st) 200484, ¶ 9. The plaintiff insisted that, because the physician at issue was a surgeon and surgeons were not mentioned

20

in this subgroup, he was not covered by the agency disclaimer in the consent form and the language "and the like" was otherwise confusing. In direct contradistinction, we held this was precisely incorrect. Rather, we found that, as the physician at issue was a surgeon, and as all medically trained surgeons are physicians, the term "all physicians" included the surgeon, even though the subcategory "surgeons" was not specifically included. See *Delegatto*, 2021 IL App (1st) 200484, ¶ 37. In so doing, we further noted that consent forms with separate groupings are becoming increasingly common and create no internal inconsistency with the term "physicians;" in fact, "express reference to these particular medical practitioners does no more than clarify the independent contractor status of these subgroups," thereby reinforcing and emphasizing their non-agency. *Delegatto*, 2021 IL App (1st) 200484, ¶¶ 38-41. Moreover, other factors within the consent form we considered included its format (though it had multiple parts, all of the text regarding independent contractors and employees appeared in one paragraph only); the fact that the decedent had signed the same consent form on three separate occasions (all of which indicated her satisfaction in understanding the consent and its significance); and the fact that, in addition to a full signature at the end of the form, there was a spot for initials just to the right of the employer-agency disclaimer cited, which decedent had initialed. See *Delegatto*, 2021 IL App (1st) 200484, ¶¶ 43-45. With all these considerations, we concluded that any argument that the consent form was inadequate because it could have included more specificity could not stand. See *Delegatto*, 2021 IL App (1st) 200484, ¶¶ 46-47 (there is no ambiguity, and no agency relationship, when "[i]t is sufficient that the consent form set forth the relationship

21

between the physician and the hospital with enough clarity that the consenting patient is on notice").

¶ 38        As in *Delegatto*, when we further examine other considerations surrounding the consent form at issue, we, too, find that plaintiff's similar proposition cannot stand. For example, first, while the form here is broken up into different paragraphs, there are no conflicting paragraphs regarding employees and independent contractors. Just like the form in *Delegatto*, and in contrast to that in *Spiegelman*, all the text discussing independent contractor and employee status of physicians appears only in section 2. There are no other paragraphs anywhere in the form that could create an ambiguity. Also, as in *Delegatto* and unlike *Spiegelman*, decedent here was presented with and signed the same identical consent form multiple times. In fact, decedent signed the form on five separate occasions, all within four months of the one at issue. On all these occasions, she completed the form fully: her full signature, the date and the time appear on the last page and her initials appear on the line provided for them at the end of section 2 on the first page.

¶ 39        Moreover, and of significant import, is that initials line itself. Very similar to *Delegatto*, the text that accompanies that line states, "I acknowledge and understand that the hospital uses independent medical contractors to provide the various services described above." It appears immediately after the conclusion of section 2 regarding physician services, and it is in the middle of the first page of the form. Out of all the other sections and paragraphs in this consent form, there is no other, regarding any other topic, that requires the patient to initial it—only this section and only this topic identifying the independent contractor status of the

22

physicians at defendant hospital. Accordingly, even though the full signature line appears at the end of the form, this space, provided immediately under section 2 and following the specific employer-agency disclaimer for consulting physicians, specialists and cardiologists, further supports the conclusion that this form provided proper notice of non-agency with respect to Drs. Kumar and Jones.

¶ 40     In addition, and moving beyond even *Delegatto*, there is a further provision in section 2 that plaintiff here fails to discuss at all. That text, set off from the rest of section 2 in its own separate paragraph and appearing in bold face type right in the middle between the opening paragraph of section 2 (which contains the list of non-employed physician-types) and the disclaimer followed by the initials line that ends the section, states that decedent's decision to undergo the procedure at issue at defendant hospital was "**not based upon any understanding or representation or advertisement that the physicians who will be treating [her] are employees or agents of**" defendant (emphasis in original). This paragraph continues by informing her that if she wishes to know if any physician she encounters there is so employed, she is to "**ask the physician**" personally and has "**the right**" thereafter to "**select her own**" or "**change**" physicians "**at any time**" following their answer (emphasis in original). With this bold-faced paragraph, the consent form expressly placed the burden on decedent to ask Drs. Kumar and Jones if she had any question with respect to their employment status. The evidence before us consists of Dr. Kumar's specific testimony that he never discussed his employment status with decedent, and plaintiff has not

provided any evidence that decedent otherwise asked either doctor regarding their employment.

¶ 41    With all these considerations surrounding the form at issue, and with her signature and initials (on multiple occasions), decedent acknowledged that she was satisfied that she understood the content and significance of this consent form. See also *Prutton*, 2020 IL App (2d) 190346, ¶ 52 (examining, as did *Delegatto*, factors in the consent form other than just the language used, including length of form, boldness of type, requirement of initials after certain paragraphs, use of bullet points, and placement of patient's signature, and ultimately finding that all these combined to support conclusion that consent form was not ambiguous or confusing with respect to the lack of agency between physician and defendant hospital).

¶ 42    Ultimately, we are not persuaded by plaintiff's argument that the consent form was inadequate because it does not unequivocally "eliminate all possibility" that Drs. Kumar or Jones were employees or agents of defendant. As plaintiff puts it, she believes that, in order for a consent form to break any appearance of agency, it must "leave zero doubt" as to the issue and anything short of this requires that a cause proceed to a jury trial. That is simply not the law. Yes, and again in viewing the spectrum, a consent form with language such as "all physicians who provide treatment are not employees of the hospital" would obviously break any appearance of agency and, in plaintiff's words, leave zero doubt of employment status. This, essentially, was the language used in *Mizyed* and some of the other cases we have cited herein. See *Mizyed*, 2016 IL App (1st) 142790, ¶ 59 (finding there could be no apparent agency with the phrase "all physicians providing service to me *** are independent

24

medical staff physicians and hot employees or agents of [the defendant hospital]"); see also, *e.g.*, *Delegatto*, 2016 IL App (1st) 200484; *Gore v. Provena Hospital*, 2015 IL App (3d) 130446 (consent form with phrase "all doctors furnishing service to me" clearly absolved hospital of any apparent agency); *Prutton*, 2020 IL App (2d) 190346, ¶ 52. However, our Court has been presented with many cases in which a consent form falls somewhat short of explicit "all-physician" language but, nonetheless, has found the language used to still be clear that there is no apparent agency. See, *e.g.*, *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 28 (affirming summary judgement where form stated, in part, "physicians are not employees of the medical center"); *Wallace*, 389 Ill. App. 3d at 1083 (summary judgment in favor of hospital proper where consent form stated, "I understand that physicians who provide professional services to me *** are not employees or agents of [the hospital], but are independent contractors"); *Churkey v. Rustia*, 329 Ill. App. 3d 239, 241 (2002) (affirming summary judgment where consent form stated that hospital " 'uses independently contracted physicians' "); *James*, 299 Ill. App. 3d at 629 (summary judgment in favor of hospital proper where form stated, " 'the physicians on staff at this hospital are not employees or agents of the hospital, but independent medical practitioners who have been permitted to use its facilities' ").

¶ 43      Again, we are operating on a spectrum, one that, as we have noted, is to look at the totality of the consent form—as a whole. While the phrase cited by plaintiff here that physicians at defendant hospital who provide services "may not be employed" by defendant does give us initial pause, the next immediate sentence specifying that consulting physicians,

specialists and cardiologist—subgroups to which Drs. Kumar and Jones so obviously belong—are, indeed, independent contractors, eliminates any assertion of ambiguity here. This clear and specific language, combined with the stand-alone bold-face paragraph in the middle of section 2, the initials-requiring text that concludes that section, and the fact that only this paragraph in the entire form deals with physician services with no contradictory phrase anywhere else in the document and is the only to require added initials, puts the instant cause much closer on the spectrum to *Mizyed* and *Frezados*' effective disclaimers of apparent agency and much farther from *Schroeder* and *Spiegelman*'s confusing and ambiguous provisions.

¶ 44    In sum, we find no ambiguity in the consent form at issue, and plaintiff has not succeeded in citing any. In our view, the form, which plaintiff signed and initialed on more than one occasion, was clear and unambiguous that consulting physicians, specialists and cardiologists Drs. Kumar and Jones were not employees of defendant. Accordingly, plaintiff has failed to satisfy the holding out component of her apparent agency claim and has not raised any factual question in this regard. As such, we need not go further to analyze any other claims made here. See *Bagent*, 224 Ill. 2d at 163 ("[if] the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper"); accord *Mizyed*, 2016 IL App (1st) 142790, ¶ 64, citing *Churkey*, 329 Ill. App. 3d at 245 (such finding requires no further legal analysis); see also *Delegatto*, 2021 IL App (1sti) 200484, ¶ 47, citing *Wallace*, 389 Ill. App. 3d at 1085-86 (failure to satisfy the first element of an apparent agency claim, namely, holding out, renders summary judgment appropriate and there is no need to address

any other claims made by the plaintiff).  Based on the record before us, we find that, as plaintiff did not satisfy all the requirements of an apparent agency claim, defendant could not be held vicariously liable; and, as she could not legally survive defendant's motion for summary judgment, we hold that summary judgment in favor of defendant was proper.

¶ 45                                      CONCLUSION

¶ 46        Accordingly, for all the foregoing reasons, we affirm the judgment of the trial court.

¶ 47        Affirmed.